**EXHIBIT L**

1   Sanford Jay Rosen, State Bar No. 62566
    Maria V. Morris, State Bar No. 223903
2   Lori E. Rifkin, State Bar No. 244081
    ROSEN, BIEN & GALVAN, LLP
3   315 Montgomery Street, Tenth Floor
    San Francisco, CA 94104
4   Telephone: (415) 433-6830
    Facsimile: (415) 433-7104
5   srosen@rbg-law.com

6   [Additional Counsel Listed on Following Page]

7

8   Attorneys for Plaintiffs

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                     COUNTY OF ALAMEDA

11  WILLIAM HELM, DEBORAH PRISE,          )  Case No. RG 07359602
    HEATHER P. RADY, [see Complaint and   )
12  Appendices for a listing of plaintiffs] et al., on )  **CLASS ACTION**
    behalf of themselves and all other employees )
13  and former employees similarly situated, )  **AMENDED COMPLAINT**
                                          )
14              Plaintiffs,               )  **(1)  VIOLATION OF CALIFORNIA**
                                          )       **LABOR LAWS**
15  v.                                    )  **(2)  STATE WAGE AND HOUR**
                                          )       **LAWS**
16  ALDERWOODS GROUP, INC., PAUL A.       )  **(3)  UNJUST ENRICHMENT/**
    HOUSTON, SERVICE CORPORATION          )       **RESTITUTION**
17  INTERNATIONAL, SCI FUNERAL AND        )  **(4)  CONVERSION**
    CEMETERY            PURCHASING        )  **(5)  FRAUD AND DECEIT**
18  COOPERATIVE, INC., SCI EASTERN        )  **(6)  MISREPRESENTATION**
    MARKET SUPPORT CENTER, L.P., SCI      )  **(7)  BREACH OF CONTRACT**
19  WESTERN MARKET SUPPORT CENTER,        )  **(8)  BREACH OF IMPLIED**
    L.P.  a/k/a  SCI  WESTERN  MARKET     )       **COVENANT OF GOOD FAITH**
20  SUPPORT   CENTER,   INC.,   and   SCI )       **AND FAIR DEALING**
    HOUSTON MARKET SUPPORT CENTER,        )  **(9)  QUANTUM MERUIT**
21  L.P.,                                 )  **(10) UNLAWFUL BUSINESS**
                                          )       **PRACTICES**
22              Defendants.               )
                                          )
23  _____)  **DEMAND FOR JURY TRIAL**

24

25

26

27

28

1  Additional Attorneys for Plaintiffs, who will
   submit applications for admission *pro hac vice*:
2
   J. Nelson Thomas, NY Attorney No. 2579159
3  Patrick J. Solomon, NY Attorney No. 2716660
   Michael J. Lingle, NY Attorney No. 3925765
4  Justin Cordello, NY Attorney No. 4131447
   Annette Gifford, NY Attorney No. 4105870
5  DOLIN, THOMAS & SOLOMON LLP
   693 East Avenue
6  Rochester, NY 14607
   Telephone: (585) 272-0540
7  Facsimile:  (585) 272-0574
   nthomas@theemploymentattorneys.com
8
   Charles H. Saul, PA State Bar No. 19938
9  Liberty J. Weyandt, PA State Bar No. 87654
   Kyle T. McGee, PA State Bar No. 205661
10 MARGOLIS EDELSTEIN
   525 William Penn Place
11 Suite 3300
   Pittsburgh, PA 15219
12 Telephone: (412) 281-4256
   Facsimile: (412) 642-2380
13 csaul@margolisedelstein.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CLASS ACTION COMPLAINT

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, and file the following Class Action Complaint:

## I.    INTRODUCTION AND PROCEDURAL HISTORY

1.    This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, under the laws of California and other laws of the various States in which defendants do business.

2.    On December 12, 2006, Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI"), both named defendants in this action, were named in a complaint filed in the Western District of Pennsylvania.

3.    Prior to the filing of the Pennsylvania complaint, SCI had acquired Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary. After the merger, SCI continued to operate the vast majority of both its own funeral homes and those of Alderwoods.

4.    The Pennsylvania complaint was filed as a class and collective action alleging, *inter alia*, that employees who worked at defendants' funeral home locations were not properly paid for all the time they worked for defendants. It asserted violations of both the Fair Labor Standards Act ("FLSA") and state wage and hour laws.

5.    The employees (whether they worked only at an Alderwoods location that became an SCI location, or at any other SCI location) shared a number of factual similarities: they suffered similar pay violations; SCI and/or its agents were their joint employers; SCI was liable for the violations of the entities it had acquired.

6.    Because of the overlapping legal liability of defendants, as well as the overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in the interests of judicial efficiency for defendants to be named in a common action.

7.    The Court in the Western District of Pennsylvania conditionally certified an FLSA class of employees and directed that notice be sent to those individuals who worked at

1  an Alderwoods location.

2      8.    In response to that notice, hundreds of current and former employees opted-in to

3  the Pennsylvania action.

4      9.    On or about June 8, 2007, the Court in the Western District of Pennsylvania

5  declined to exercise supplemental jurisdiction over any of the state law claims alleged in that

6  action.  Therefore, on or about July 9, 2007, the employees of SCI and Alderwoods reasserted

7  their state law claims in a Class Action Complaint filed in the Superior Court of the State of

8  California for the County of Alameda, Case No. RG 07334643 (the "Combined State Law

9  Action").

10     10.    Subsequently, the Court in the Western District of Pennsylvania determined it

11 would only hear claims on behalf of employees who worked only for Alderwoods, and that

12 claims of employees who had worked only at other SCI locations should be heard in a separate

13 action.

14     11.    Therefore, based on defendants' position that resulted in that ruling, the

15 Combined State Law Action was voluntarily dismissed so that the state law claims of the

16 employees who worked at locations managed by Alderwoods could be heard separately from

17 those who worked at other SCI locations.

18     12.    In the instant action, employees who worked at funeral locations managed by

19 Alderwoods assert violations of various state laws based upon defendants' failure to pay

20 employees their regular or statutorily required rate of pay for all hours worked.

21     13.    The plaintiffs in this lawsuit include employees who worked at all Alderwoods

22 funeral locations prior to the time that SCI or its affiliates assumed activities related to

23 plaintiffs' employment.  SCI and its affiliates are named in this action on the basis of their

24 liability as successors-in-interest to Alderwoods.

25     14.    To extent that plaintiffs suffered the violations alleged in this action *after* SCI

26 or its affiliates began assuming activities related to plaintiffs' employment, those claims have

27 been separately asserted in the action *Bryant, et al. v. Service Corporation International, et. al,*

28 Case No. RG07359593.

-2-
AMENDED COMPLAINT-CLASS ACTION
*Heim et al v. Alderwoods et al - Case No. RG 07359602*

## II.    JURISDICTION AND VENUE

15.    This Court has jurisdiction over defendants because defendants conduct business in this State.

16.    Venue is proper in this judicial district, pursuant to Code of Civil Procedure § 395.5 and Corporations Code § 2105.

17.    Upon information and belief, defendant Alderwoods Group, Inc. ("Alderwoods") is a foreign corporation which has not obtained a certificate of qualification to do business in California.

18.    Upon information and belief, defendant Service Corporation International ("SCI") is a foreign corporation which has not obtained a certificate of qualification to do business in California.

19.    Upon information and belief, defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. is a foreign corporation which has not obtained a certificate of qualification to do business in California.

20.    Venue is also proper in this judicial district because defendants maintain and operate one or more business locations, transact business, and/or have agents in Alameda County, as well as in other counties in the State of California, and are otherwise within this Court's jurisdiction for purposes of service of process.  Obligations and/or liabilities of the defendants arose in this County because defendants have contracted to employ or have employed plaintiffs in Alameda County, as well as in other counties in the State of California. Some of the claims in this matter arose from contracts for employment which were to be performed, at least in part, in Alameda County, as well as in other counties in the State of California.  Some of the unlawful acts alleged herein occurred in Alameda County, as well as in other counties in the State of California, and have a direct effect on plaintiffs within Alameda County and within the State of California.

III.    **PARTIES**

      **A.  Plaintiffs**

    21.    The class members ("Class Members") are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  As more fully set forth in the foregoing paragraphs, which Class Members incorporate by reference as if fully set forth herein, Class Members' claims are connected to Alameda County as some of those claims arose from contracts to be performed in Alameda County, some of the unlawful acts alleged herein occurred in Alameda County, and some of those acts have a direct effect on Class Members within Alameda County.

      **B.  Defendants**

    22.    Defendants Alderwoods, SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P. ("SCI Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston"), are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

    23.    The SCI Cooperative, SCI Western, SCI Eastern and SCI Houston are all entities which are owned, directly or indirectly, by SCI.  Together with SCI, those entities are referred to collectively as the "SCI Defendants."

    24.    At all relevant times, Alderwoods was plaintiffs' employer and is thus liable to plaintiffs as an employer, joint employer, single employer and/or otherwise according to statutory and common law.

*Paul A. Houston is Liable to Class Members*

    25.    Defendant Paul A. Houston has acted as Chief Executive Officer and Director of Alderwoods since in or around 2002.

    26.    Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern the policies defendants adopt and the

1   implementation of those policies.

2       27.    Upon information and belief, in concert with others, Mr. Houston has the

3   authority to, and does, make decisions that concern defendants' operations, including functions

4   related to employment, human resources, training, payroll, and benefits.

5       28.    Upon information and belief, due in part to his role as Chief Executive Officer

6   and Director, Mr. Houston is actively involved in the creation of the illegal policies

7   complained of in this case, including, but not limited to, the On Call Pay Policy, Community

8   Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break

9   Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and

10  the policy regarding the calculation of Class Members' overtime.

11      29.    Upon information and belief, due in part to his role as Chief Executive Officer

12  and Director, Mr. Houston actively advises defendants' agents on the enforcement of the

13  illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy,

14  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,

15  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time

16  Policy, and the policy regarding the calculation of Class Members' overtime.

17      30.    Upon information and belief, due in part to his role as President and Chief

18  Executive Officer, Mr. Houston actively ensures defendants' compliance or non-compliance

19  with the state and common laws asserted in this action.

20      31.    Upon information and belief, in concert with others, Mr. Houston has the

21  authority to, and does, make decisions that concern the reviewing and counseling of defendants

22  regarding employment decisions, including hiring and firing of Class Members.

23      32.    Upon information and belief, in concert with others, Mr. Houston has the

24  authority to, and does, make decisions that concern employees' schedules, hours and standard

25  benefit levels.

26      33.    Upon information and belief, in concert with others, Mr. Houston has the

27  authority to, and does, make decisions that concern standard pay scales.

28      34.    Upon information and belief, in concert with others, Mr. Houston has the

-5-
AMENDED COMPLAINT-CLASS ACTION
*Helm et al v. Alderwoods et al* - Case No. RG 07359602

1    authority to, and does, make decisions that concern defendants' human resources policies, the

2    resolution issues and disputes regarding policies and their applications, the counsel locations

3    receive regarding human resources issues, and communications with employees about human

4    resources issues and policies.

5        35.    Upon information and belief, in concert with others, Mr. Houston has the

6    authority to, and does, make decisions that concern defendants' employment and human

7    resources records, including the systems for keeping and maintaining those records.

8        36.    Upon information and belief, in concert with others, Mr. Houston has the

9    authority to, and does, make decisions that concern training and education functions across

10   SCI's network.

11       37.    Upon information and belief, in concert with others, Mr. Houston has the

12   authority to, and does, make decisions that concern the type and scope of training employees

13   must attend as well as any compensation they receive for attending training.

14       38.    Upon information and belief, in concert with others, Mr. Houston has the

15   authority to, and does, make decisions that concern payroll and commission functions across

16   SCI's network.

17       39.    Upon information and belief, in concert with others, Mr. Houston has the

18   authority to, and does, make decisions that concern the system for keeping and maintaining

19   employees' payroll records, the timing and method with which payment is conveyed to

20   employees, and the manner and method in which employees receive payroll information

21   including their payroll checks.

22       40.    Upon information and belief, in concert with others, Mr. Houston has the

23   authority to, and does, make decisions that concern benefit plans across SCI's network.

24       41.    Upon information and belief, in concert with others, Mr. Houston has the

25   authority to, and does, make decisions that concern the type and scope of benefits available to

26   employees, the method and manner in which information regarding those plans is conveyed to

27   employees, and the system for keeping and maintaining records related to employees' benefits.

28       42.    Because Mr. Houston has authority to hire or fire employees, provide and direct

support regarding human resources issues, including the hiring and firing of Class Members, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Houston has the power to hire and fire employees.

43.    Because Mr. Houston has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Houston supervises and controls employees' work schedules and/or conditions of employment.

44.    Because Mr. Houston has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Houston determines the rate and method of employees' payment.

45.    Because Mr. Houston has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Houston maintains employees' employment records.

46.    Because Mr. Houston provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Class Members.

47.    Because Mr. Houston is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-

1   compliance with the state and common laws asserted in this action, he actively participates in
2   the violations complained of in this action.

3        48.    Based upon the foregoing, Mr. Houston is liable to Class Members because of
4   his active role in operating the business, his status as an employer, or according to state
5   statutory and common law.

6   *The SCI Defendants Are Liable to Class Members as Successors-in-Interest*

7        49.    In or about November, 2006, SCI acquired Alderwoods and Alderwoods became
8   SCI's wholly-owned subsidiary. After the merger, the SCI Defendants continued to operate
9   the vast majority of both their own funeral homes and those of Alderwoods.

10       50.    Upon information and belief, Coronado Acquisition Group ("Coronado"), at
11  relevant times hereto, was a wholly owned subsidiary of SCI, which was formed by SCI for the
12  sole purpose of merging with Alderwoods. At relevant times hereto, SCI and Coronado had
13  the same offices, telephone numbers, and corporate officers.

14       51.    Upon information and belief, Alderwoods, through its shareholders, has adopted
15  a merger agreement by and between Alderwoods, Coronado and/or one or more of the SCI
16  Defendants.

17       52.    Upon information and belief, SCI, through its shareholders, has adopted a merger
18  agreement between Alderwoods, Coronado and/or one or more of the SCI Defendants.

19       53.    Upon information and belief, as of approximately November 2006, Alderwoods
20  and/or Coronado ("Merged Entities") became a wholly owned subsidiary of SCI.

21       54.    Upon information and belief, the Merged Entities, under the merger agreement,
22  continue business operations in substantially the same form as before the merger.

23       55.    Upon information and belief, the Merged Entities, under the merger agreement,
24  continue to use substantially the same workforce as before the merger, with substantially the
25  same supervisors and same working conditions as Alderwoods.

26       56.    Upon information and belief, the Merged Entities, under the merger agreement,
27  provide essentially the same services as before the merger and use the same facilities,
28  equipment and method of providing services as Alderwoods.

57.    Upon information and belief, the SCI Defendants are successors-in-interest to Alderwoods' liability.  As a successors-in-interest, the SCI Defendants are jointly and severally liable for all of the unlawful conduct of Alderwoods alleged herein.

## IV.    CLASS ACTION ALLEGATIONS

58.    The claims arising under the state wage laws set forth below are properly maintainable as a class action under Cal. Civ. Proc. § 382.

59.    Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

60.    The class size is believed to be several thousands of employees, a significant percentage of whom are within California.

61.    Common questions of law and fact predominate in this action because the claims of all Class Members are based on whether defendants' practice of not paying nonexempt employees their regular or statutorily required rate of pay for all hours worked violates California state law and the state laws of the various other states in which defendants do business.

62.    Common questions of law and fact include, but are not limited to, the following:

    a.  Whether Class Members are entitled to payment for all of the time they worked for defendants.

    b.  Whether Class Members are entitled to payment at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

    c.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members for all of the time they worked for defendants.

    d.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

63.    The named plaintiffs' claims are typical of, and concurrent to, the claims of Class Members, because they are similarly situated. The named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for overtime work.

64.    The named plaintiffs will fairly and adequately represent and protect the interests of Class Members. The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members' claims. The class counsel are experienced in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

65.    There are no known conflicts of interest between and among Class Members.

66.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each Class Member has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering, and/or failing to pay employees their regular or statutorily required rate of pay for all hours worked. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

## V.    FACTUAL BACKGROUND

67.    Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

68.    Defendants' policy and/or practice was to not compensate Class Members their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

69.    Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

70.    Defendants' practice is to be deliberately indifferent to violations of the statutory overtime requirements.

71.    The failure to pay overtime is willful.

72.    Examples of defendants' policies and practices to deprive Class Members of their earned wages and wage premiums are set forth below:

    a.    Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

    b.    Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed.

    c.    Defendants' implemented a "Training Compensation Policy." Under the policy, defendants suffered or permitted their employees to take various types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

    d.    Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

    e.    Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for meal breaks. Defendants did, however, suffer and permit employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

    f.    Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under

this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted employees to work overtime and therefore, employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g. Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted employees to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew such time had been worked, it had not been "recorded."

h. Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Class Members' overtime.

73. Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

74. More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

75. Defendants failed to pay full compensation to Class Members who are no longer employed by defendants promptly after those Class Members were discharged, laid off or resigned. In fact, defendants' failure to fully compensate those Class Members is continuing.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)

76. The preceding paragraphs are incorporated as if fully set forth herein.

### Failure to Pay Overtime Compensation

77. Defendants willfully violated their obligations under California law, including those under California Labor Code §1194, *et seq.*, by failing to pay Class Members the legal overtime compensation applicable to Class Members.

78.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation**

79.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, *et seq.*, by willfully failing to pay Class Members who have been discharged or laid off all wages earned and unpaid at the time of discharge or layoff.

80.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours thereafter.

81.    Defendants did not pay Class Members who were discharged, were laid off or resigned their regular or statutorily required rate of pay for all hours worked, as required by California law.  Defendants' failure to pay those amounts is ongoing.

82.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

83.    Defendants are liable to Class Members for statutory penalties, pursuant to California Labor Code § 203, in the amounts set forth therein.

**Failure to Provide Required Meal and Rest Periods**

84.    Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226.7 and 512, *et seq.*, by willfully failing to provide Class Members with legally required meal and rest periods.

85.    Defendants repeatedly and regularly interrupted Class Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.

86.    Defendants failed to compensate Class Members for missed meal and rest breaks.

87.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Furnish Timely and Accurate Wage Statements**

88.     Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226(a) and 226.3, *et seq.*, by willfully failing to provide Class Members with timely and accurate wage statements as required by California law.

89.     As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

90.     Wherefore, Class Members request relief as described below.

## SECOND CAUSE OF ACTION

### STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)

91.     The preceding paragraphs are incorporated as if fully set forth herein.

92.     Defendants willfully violated their obligations to properly compensate Class Members under the wage laws of the states in which defendants do business including:

    a.  Alaska Stat. § 23.10.050, *et seq.*;

    b.  Arizona Rev. Stat. § 23-201, *et seq.*;

    c.  Arkansas Code § 11-4-201, *et seq.*;

    d.  Colorado Rev. Stat. § 8-6-101, *et seq.*; Colorado Code Regs. § 1103-1, *et seq.*;

    e.  Connecticut Gen. Stat. § 31-58, *et seq.*;

    f.  820 Illinois Comp. Stat. 105/1, *et seq.*; 820 Illinois Comp. Stat. 105/12(a); 820 Illinois Comp. Stat. 115/1, *et seq.*;

    g.  Indiana Code § 22-2-2-1, *et seq.*; Indiana Code § 22-2-2-4, *et seq.*; Indiana Code § 22-2-5-1, *et seq.*; Indiana Code § 22-2-9-2, *et seq.*;

    h.  Kansas Stat. § 44-1201, *et seq.*;

    i.  Louisiana Rev. Stat. § 23:631, *et seq.*;

    j.  Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

    k.  Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*; Massachusetts Gen. Laws Ch. 149, § 148, *et seq.*; Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

    l.  Michigan Comp. Laws § 408.381, *et seq.*;

m. Minnesota Stat. § 177.21, *et seq.*;  Minnesota Stat. § 181.13, *et seq.*;

n. Montana Code § 39-3-401, *et seq.*;

o. Nevada Rev. Stat. § 608.005, *et seq.*;

p. New Hampshire Rev. Stat. § 279:1 *et seq.*;

q. New Mexico Stat. § 50-4-1, *et seq.*;

r. New York Lab. Law § 160, *et seq.*;

s. North Carolina Gen. Stat. § 95-25.1, *et seq.*;

t. Ohio Rev. Code § 4111.01, *et seq.*;

u. Oregon Rev. Stat. § 653.005, *et seq.*;

v. 43 Pennsylvania Stat. § 333.101, *et seq.*;  43 Pennsylvania Stat. § 206.3, *et seq.*;

w. 29 Laws of Puerto Rico §250, *et seq.*;

x. Rhode Island Gen. Laws § 28-12-1, *et seq.*;

y. South Carolina Code § 41-10-10, *et seq.*;

z. Washington Rev. Code § 49.46.005, *et seq.*;

aa. West Virginia Code § 21-5C-1, *et seq.*;

93.    As a direct and proximate cause of defendants' violations of these statutes, Class Members have suffered damages.

94.    Wherefore, Class Members request relief as described below.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)

95.    The preceding paragraphs are incorporated as if fully set forth herein.

96.    Defendants have received financial gain at the expense of Class Members.

97.    Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

98.    Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members. As a result of this conduct, the common laws and state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

99.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

100.    Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION

### CONVERSION (by all plaintiffs against all defendants)

101.    The preceding paragraphs are incorporated as if fully set forth herein.

102.    At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due. The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Class Members.

103.    In refusing to pay wages and overtime to Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Class Members for defendants' own use, purpose and benefit. At the time the conversion took place, Class Members were entitled to immediate possession of the amount of wages and overtime earned. As a result, Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial. This conversion was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Class Members. This conversion was concealed from Class Members.

104.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to Class Members.

105.    As a result of defendants' actions, Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

106.    Wherefore, Class Members request relief as described below.

## FIFTH CAUSE OF ACTION

### FRAUD AND DECEIT (by all plaintiffs against all defendants)

107.    The preceding paragraphs are incorporated as if fully set forth herein.

108.    Defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable federal and state laws. Some examples include defendants' false statements in their policy manuals that "[a]ll non-exempt employees will be compensated for all hours worked" and that defendants "will comply with all applicable federal, state and local laws. If any of the provisions of this policy conflict with any federal, state or local laws or regulations, then the laws or regulations will supersede the Company's policy in those specific locations."

109.    Defendants, however, at all times intended to violate applicable federal and state laws by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

110.    These misrepresentations were material to the terms of Class Members' employment contracts, and Class Members relied on the misrepresentations in agreeing to accept and continue employment with defendants. This reliance was reasonable, as Class

-17-

1  Members had every right to believe that defendants would abide by their obligations pursuant

2  to applicable federal and state law.

3      111.    Defendants willfully violated their obligations by committing fraud against Class

4  Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

5  California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas,

6  Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

7  Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,

8  Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia,

9  Washington, and West Virginia and are liable to Class Members.

10      112.    As a direct and proximate cause of the fraud committed by defendants, Class

11  Members did not receive the statutorily mandated wages for overtime and suffered damages.

12      113.    Defendants acted maliciously when they committed the wrongful acts which

13  constitute this cause of action such that it warrants the imposition of punitive and exemplary

14  damages.

15      114.    Wherefore, Class Members request relief as described below.

16                          **SIXTH CAUSE OF ACTION**

17          **MISREPRESENTATION (by all plaintiffs against all defendants)**

18      115.    The preceding paragraphs are incorporated as if fully set forth herein.

19      116.    In particular, Class Members incorporate and refer to paragraphs 107 through

20  109 above, regarding the material misrepresentations made by defendants.

21      117.    When defendants hired Class Members, they represented to Class Members that

22  they would be fully compensated for all services performed, as more fully set forth above.

23      118.    There was no reasonable basis for defendants to believe these representations

24  because defendants had a continuing practice and policy of failing to pay their employees their

25  regular or statutorily required rate of pay for all hours worked.

26      119.    Class Members relied upon defendants' representations by performing work and

27  services for defendants. This reliance was reasonable, as Class Members had every right to

28

1  believe that defendants would abide by their obligations pursuant to applicable federal and

2  state law.

3      120.    Defendants willfully violated their obligations under the common laws and the

4  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,

5  Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts,

6  Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New

7  Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico,

8  Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia by

9  misrepresenting to Class Members that they would be fully compensated for all services

10  performed and are liable to Class Members.

11     121.    As a result of their reliance upon defendants' misrepresentations, Class Members

12  suffered damages because they were not appropriately compensated with the regular or

13  statutorily required rate of pay for all hours worked.

14     122.    As a direct and proximate result of defendants' negligent misrepresentation,

15  Class Members suffered damages.

16     123.    Wherefore, Class Members request relief as described below.

17                          **SEVENTH CAUSE OF ACTION**

18            BREACH OF CONTRACT (by all plaintiffs against all defendants)

19     124.    The preceding paragraphs are incorporated as if fully set forth herein.

20     125.    By entering into an employment relationship, defendants and each Class Member

21  entered into a contract for employment.

22     126.    Each such contract included an implied or express term that defendants agreed to

23  fulfill all of their obligations pursuant to applicable state and federal law.

24     127.    Defendants willfully breached the implied contract term by failing to pay Class

25  Members for all of the time Class Members worked and by failing to pay Class Members their

26  regular or statutorily required rate of pay for all hours worked.

27     128.    Defendants willfully violated their obligations under the common laws and the

28  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,

-19-
AMENDED COMPLAINT-CLASS ACTION
*Helm et al v. Alderwoods et al - Case No. RG 07359602*

Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to Class Members.

129.    As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

130.    Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (by all plaintiffs against all defendants)

131.    The preceding paragraphs are incorporated as if fully set forth herein.

132.    The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state or federal law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract.

133.    Defendants breached the implied covenant of good faith and fair dealing by failing to pay Class Members the wages and overtime that was due to Class Members.

134.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to Class Members.

135.  As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Class Members have suffered damages.

136.  Wherefore, Class Members request relief as described below.

## NINTH CAUSE OF ACTION

### QUANTUM MERUIT (by all plaintiffs against all defendants)

137.  The preceding paragraphs are incorporated as if fully set forth herein.

138.  Defendants willfully violated their obligations by failing to pay Class Members for the reasonable value of the services performed by Class Members for defendants under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia are liable to Class Members under quantum meruit.

139.  As a direct and proximate cause of defendants' failure to pay Class Members for the reasonable value of services performed by Class Members for defendants, Class Members suffered damages.

140.  Wherefore, Class Members request relief as described below.

## TENTH CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)

141.  The preceding paragraphs are incorporated as if fully set forth herein.

142.  Defendants' failure to pay Class Members for all time worked constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code § 17200, *et seq.*

143.  The conduct of defendants in failing to pay Class Members for all time worked constitutes and was intended to constitute unfair competition and unlawful unfair and fraudulent business acts and practices within the meaning of California Business and Professional Code § 17200, *et seq.*

144. As a result of defendants' violations of California Business and Professional Code § 17200, *et seq.*, defendants have unjustly enriched themselves at the expense of Class Members.

145. To prevent their unjust enrichment, defendants should be required, pursuant to California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains for purpose of making full restitution to all injured Class Members. Defendants should also be permanently enjoined from continuing their violations of California Business and Professional Code § 17200, *et seq.*

146. Defendants willfully violated their obligations under the California Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

147. Wherefore, Class Members request relief as described below.

## PRAYER FOR RELIEF

**WHEREFORE**, Class Members demand judgment against defendants in their favor and that they be given the following relief:

    (a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

    (b)    an award of the value of Class Members' unpaid wages;

    (c)    liquidated, compensatory, consequential and punitive damages;

    (d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Class Members' rights;

    (e)    an award of pre- and post-judgment interest; and

    (f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

## JURY DEMAND

Class Members demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

ROSEN, BIEN & GALVAN, LLP

Date: January 25, 2008          By: _____

Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256
Attorneys for Plaintiffs

1

## APPENDIX A

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

2

ROBERT CHERNETSKY, ROBERT JONES, HENRY KLEIN, STACEY WEINSTEIN,
3 JEFFREY SACHS, JOHNNY COLEMAN, JOHN KEATH, CHAD WICKHAM, JAMES
CROUCH, JOHNNY JOHNSON, RICKIE HAMILTON, SANDY THOMAS, ROGER
4 HUGO, ROBERT SHAW, BETTY KNIGHT, STEPHANIE RIGGS, LARRY HAMMOCK,
STEVEN TILLER, STROTHER FULCHER, MARY HOLDEN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-
AMENDED COMPLAINT-CLASS ACTION
*Helm et al v. Alderwoods et al* - Case No. RG 07359602

**APPENDIX B**

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

Consent forms are attached in this Appendix for the following individuals: ROBERT A. ACEVEZ, FREDERICK R. ALDRICH, MERLIN ALEXANDER, ELIAS ALVIDREZ, STEVEN A. ARNOLD, JAMES A. BAASCH, ROBERT BOWEN, MICHELE BREINDEL, LAWRENCE F. CAMP, WILLIAM CASTELLARIN, DEBBIE K. CHATMAN (BRANDT), COREY W. CLARY, KATHRYN COSPER, DIANE CRAIG, JEFFREY A. DIGGS, KATHRYN DILDY, LOUIE DOMINGUEZ, MARC A. DUMONT, JAMES C. DURDEN, STEPHEN ESCOBAR, JOHN R. FERGUSON, DARIN D. FORAN, ROBERT IDEMOTO, KENNETH GIACONE, ELIZABETH M. GRANT, JUDONA M. GREEN, WILLIAM O. GWYN, LINDA T. HAGERTY, DOUGLAS HAZEN, CARRIE HENDERSON, JAMES HENDERSON, BERNARD M. HIRREL, JAMES HOLDER, WILLIAM HUDSON III, JULIUS E. JOHNSON, WILTON KING, EDDIE KIRKPATRICK, W. SCOTT KOLWYCK, RONALD LANGLEY, FRANK LEWIS, CHARLES LOWTHER, SARAH MALMI, STEVEN L. MARTZ, EUGENIA C. MATTHEWS, NICK MCFERRAN, PAUL D. MEIZLER, HAROLD E. METCALF, MICHAEL NAPERALSKY, SEAN J. OBERSKI, RICHARD E. PETERSEN, J.D. POOL, MELISSA RAY, JACK L. REDDICK, DENNIS ROBERTSON, RICHARD E. SALHUS, JOHN SCHABLOSKI, DAVID SCHNELL, WARREN L. SEIZ, WILLIAM H. SHUFF, MYRA S. SLOAN, MONECIA SMITH, JODY P. SPIESE, MIKAL STAMPKE, FRANCIS STEINHOFF, GREGORY STUMP, TORREY SUMMERS, WILLIAM T. SUTTER III, JOSEPH G. TAFOYA JR., STEPHEN TAKESIAN, JERRY TAWNEY, TORI TAYLOR, PHILIP R. TILLMAN, FLORINDA D. TREJO, GAYLE WALKER, JAMES WHALEY, GEORGE T. WHITE, DAVID WYATT, JOHN S. ZALESKI

**EXHIBIT M**

1    Tod F. Schleier, State Bar No. 004612
     Bradley H. Schleier, State Bar No. 011696
2    SCHLEIER LAW OFFICES, P.C.
     3101 N. Central Avenue
3    Suite 1090
     Phoenix, AZ 85012
4    Telephone: (602) 277-0157
     Facsimile: (602) 230-9250
5    tod@schleierlaw.com
     brad@schleierlaw.com
6
     Attorneys for Plaintiffs
7
     [Additional Counsel Listed on Following Page]
8

9            UNITED STATES DISTRICT COURT

10             DISTRICT OF ARIZONA

11              PHOENIX DIVISION

12
     JAMES STICKLE; ELEANOR RIGGIO;  )  Case No.
13   FRANK ACUNA; JOSEPH BIERNACKI;  )
     GORDON FARMER; RHEALYN        )  **COMPLAINT— Class Action**
14   HOLLAND; RICHARD LAMASTERS;   )  **DEMAND FOR JURY TRIAL**
     KENNETH ALLEN, et. al,          )
15   on behalf of themselves         )
     and all employees similarly situated,  )
16                           )
         Plaintiffs,            )
17           - vs -         )
                           )
18   SCI WESTERN MARKET SUPPORT  )
     CENTER, L.P. a/k/a SCI WESTERN   )
19   MARKET SUPPORT CENTER, INC.; SCI )
     EASTERN MARKET SUPPORT CENTER, )
20   L.P.; SCI HOUSTON MARKET SUPPORT )
     CENTER, L.P.; SCI FUNERAL AND   )
21   CEMETERY PURCHASING        )
     COOPERATIVE, INC.; SERVICE     )
22   CORPORATION INTERNATIONAL; JANE )
     D. JONES; GWEN PETTEWAY; THOMAS )
23   RYAN; CURTIS BRIGGS; THE SCI 401K )
     RETIREMENT SAVINGS PLAN; and JULIE )
24   DOUGLAS,                 )
                           )
25     Defendants.          )
     _____)
26

27

---

COMPLAINT— Class Action, DEMAND FOR JURY TRIAL

1   Additional Attorneys for Plaintiffs, who will
    submit applications for admission *pro hac vice*:
2
    J. Nelson Thomas, NY Attorney No. 2579159
3   Patrick J. Solomon, NY Attorney No. 2716660
    Michael J. Lingle, NY Attorney No. 3925765
4   Annette Gifford, NY Attorney No. 4105870
    Justin Cordello, NY Attorney No. 4131447
5   DOLIN, THOMAS & SOLOMON LLP
    693 East Avenue
6   Rochester, NY 14607
    Telephone: (585) 272-0540
7   Facsimile:  (585) 272-0574
    nthomas@theemploymentattorneys.com
8
    Charles H. Saul, PA State Bar No.19938
9   Liberty J. Weyandt, PA State Bar No. 87654
    Kyle T. McGee, PA State Bar No. 205661
10  MARGOLIS EDELSTEIN
    525 William Penn Place
11  Suite 3300
    Pittsburgh, PA 15219
12  Telephone: (412) 281-4256
    Facsimile: (412) 642-2380
13  csaul@margolisedelstein.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

**CLASS ACTION COMPLAINT**

   **AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Schleier Law Offices, P.C., Dolin, Thomas & Solomon LLP, and Margolis Edelstein, and file the following Class Action Complaint:

## I.    INTRODUCTION

   1.    This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1332(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1059(a)(1), for defendants' failure to maintain accurate payroll records and credit plaintiffs' 401(k) plans with their non-reduced weekly wages and correct overtime compensation; and under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, for defendants' pattern of activity in employing the mails to pursue a scheme of improperly obtaining plaintiffs' property by means of false or fraudulent pretenses or representations.

## II.    JURISDICTION AND VENUE

   2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under 28 U.S.C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, under 29 U.S.C. §216 (b), and under 18 U.S.C. § 1964(a) and (c).

   3.    Venue is appropriate in the District of Arizona because unlawful acts alleged in this complaint were committed in this district and because defendants conduct business in this District. Additionally, several plaintiffs, including James Stickle, Eleanor Riggio and Frank Acuna, were employed by defendants, suffered violations, and currently reside

2

1   in this District. Venue is proper before this Court under 28 U.S.C. § 1391(b).

2   **III.    PROCEDURAL HISTORY**

3       4.    On December 12, 2006, Service Corporation International ("SCI"), a named

4   defendant in this action, was named in a complaint filed in the Western District of

5   Pennsylvania.

6       5.    The Western District of Pennsylvania complaint also named Alderwoods

7   Group, Inc. ("Alderwoods") as a defendant in that action.

8       6.    Prior to the filing of the Pennsylvania complaint, SCI had acquired

9   Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary.

10      7.    After the merger, SCI continued to operate the vast majority of both its own

11  funeral homes and those of Alderwoods.

12      8.    The Pennsylvania complaint was filed as a class and collective action

13  alleging, *inter alia*, that employees who worked at defendants' funeral home locations

14  were not properly paid for all the time they worked for defendants.

15      9.    The employees (whether they worked only at an Alderwoods location that

16  became an SCI location, or at any other SCI location) shared a number of factual

17  similarities: they suffered similar pay violations; SCI and/or its agents were their joint

18  employers; SCI was liable for the violations of the entities it had acquired.

19      10.    Because of the overlapping legal liability of defendants, as well as the

20  overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in

21  the interests of judicial efficiency for defendants to be named in a common action.

22      11.    The Court in the Western District of Pennsylvania certified a class of

23  employees and directed that notice be sent to those individuals who worked at an

24  Alderwoods location.

25      12.    In response to that notice, hundreds of current and former employees opted-

26  in to the Pennsylvania action.

27      13.    Eventually, the Court in the Western District of Pennsylvania determined it

3

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  would only hear claims on behalf of employees who worked only for Alderwoods, and that
2  claims of employees who had worked only at other SCI locations should be heard in a
3  separate action.

4      14.    Therefore, plaintiffs bring this separate action for SCI employees who did
5  not work at an Alderwoods location.

6      15.    In the instant action, employees who worked at funeral locations owned by
7  SCI and its subsidiaries and affiliates allege violations of certain federal laws, including
8  the Fair Labor Standards Act, against SCI as well as its holdings and employees who were
9  responsible for the policies which resulted in the violations and which, therefore, are liable
10  as employers under federal law.

11      16.    The plaintiffs in this lawsuit include employees who worked at all SCI
12  funeral locations.

13  **IV.    CLASS ACTION ALLEGATIONS**

14      17.    The claims arising under ERISA and RICO are properly maintainable as a
15  class action under Federal Rule of Civil Procedure 23.

16      18.    The class action is maintainable under subsections (1), (2) and (3) of Rule
17  23(b).

18      19.    The class consists of current and former employees of defendants whose
19  401(k) plans were not credited with their non-reduced weekly wages and correct overtime
20  compensation.    Additionally, the class consists of current and former employees of
21  defendants who were injured by defendants' scheme to cheat employees out of their
22  property and to convert the employees' property, including their wages and/or overtime
23  pay, by misleading employees about their rights under the FLSA.

24      20.    The class size is over 50 employees.

25      21.    Plaintiffs will adequately represent the interests of the class members
26  because they are similarly situated to the class members and their claims are typical of, and
27  concurrent to, the claims of other class members.

22.    There are no known conflicts of interest between Named Plaintiffs and other class members.

23.    The class counsel, Schleier Law Offices, P.C., Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate the class members' claims.

24.    The class counsel is experienced in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal statutes.

25.    Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation is a violation of ERISA or was part of a scheme to defraud plaintiffs in violation of RICO.

26.    The class action is maintainable under subsections (2) and (3) of Rule 23(b) because plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## V.    PARTIES

### A.    Plaintiffs

27.    The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked. "Plaintiffs" expressly includes each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action.

28.    Attached to this complaint in its **Appendix A** are the current Plaintiffs' consent forms seeking recovery against their employers in an FLSA action. Each of these individuals, as well as any individual who opts-in to this action, has full party status pursuant to 29 U.S.C. § 216 (b).

29.    Defendants are liable to Plaintiffs as employers, joint employers, single

5

1    employers, alter egos and/or otherwise according to federal and state common law.

2    **B.    Defendants**

3        30.    Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc.

4    (the "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western

5    Market Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P.

6    ("SCI Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston")

7    (collectively, SCI Western, SCI Eastern and SCI Houston are referred to as the "SCI

8    Support Centers"), are enterprises engaged in interstate commerce with an annual gross

9    volume of sales not less than $500,000.

10        31.    Defendant The SCI 401K Retirement Savings Plan (the "Plan") is a 401(k)

11    plan in which Plaintiffs are or were eligible to participate.

12        32.    Defendant SCI sponsors the Plan and defendants the SCI Cooperative and

13    the SCI Support Centers benefit from the Plan.

14        33.    Defendant Julie Douglas is the administrator of the Plan.

15        34.    Upon information and belief, defendants are Plaintiffs' fiduciaries with

16    respect to the Plan.

17        35.    At all times relevant to this action, defendants are employers of Plaintiffs

18    within the meaning of 29 U.S.C. § 203 (d) and comprise an "enterprise" engaged in

19    commerce as defined in 20 U.S.C. §§ 203(r), 203(s).

20    *The SCI Support Centers Are Liable to Plaintiffs*

21        36.    SCI Western is a limited partnership or corporation which is owned, directly

22    or indirectly, by SCI.

23        37.    SCI Eastern is a limited partnership which is owned, directly or indirectly, by

24    SCI.

25        38.    SCI Houston is a limited partnership which is owned, directly or indirectly,

26    by SCI.

27        39.    The primary functions of the SCI Support Centers are to help facilitate the

6

1   execution of corporate strategies, coordinate communications between the field and

2   corporate offices, and serve as liaisons for the implementation of policies and procedures.

3       40.    The SCI Support Centers provide "day-to-day human resources services and

4   support for individual locations," including "**all** executive, management, administrative,

5   accounting, data processing, and **human resources services** for [defendants'] locations."

6   **Appendix B**, declaration of Judith M. Marshall dated July 5, 2007, at ¶4 (emphasis added).

7       41.    "[O]n-site training at funeral homes and cemeteries is provided by field

8   personnel and training departments affiliated with" the SCI Support Centers.  Appendix B

9   at ¶ 6.

10      42.    Each SCI Support Center has an ownership interest in the SCI Cooperative

11  and together the SCI Support Centers collectively own a majority of the SCI Cooperative.

12      43.    The SCI Support Centers, through their controlling interest in the SCI

13  Cooperative, provide "Dignity University training programs" by which defendants ensure

14  uniform services at their nationwide locations, publish and maintain the weekly newsletter

15  "Frontline," and the "Global Village" intranet site, through which defendants communicate

16  with their nationwide employees, and administer benefit plans for employees and contract

17  with third-party benefit providers to respond to questions related to day-to-day benefits

18  services.  Appendix B at ¶¶6-7; **Appendix C**, declaration of Gwen Petteway dated July 9,

19  2007, at ¶5.

20      44.    Additionally, the SCI Support Centers, through their controlling interest in

21  the SCI Cooperative, maintain a payroll department and database which centralize

22  information regarding Plaintiffs, including employment records and payroll information.

23  **Appendix D**, declaration of Liana Jensen dated October 4, 2007, at ¶3.

24      45.    Defendants' public filings reflect that SCI and the entities it owns, directly or

25  indirectly, including the SCI Support Centers, employ "a single line management model in

26  an effort to streamline the organization and ensure that operational efficiencies [are]

27  achieved throughout the SCI network."

46.    Defendants' public filings reflect that the funeral home locations that SCI owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

47.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, are actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

48.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

49.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

50.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, play a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

51.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set employees' schedules, hours and standard benefit levels.

52.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set standard pay scales.

53.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, determine and draft policies, answer questions regarding human resources issues and policies, resolve issues regarding policies and their application, counsel locations on human resources issues, and communicate with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

54.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

55.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

56.    Upon information and belief, including defendants' admissions, the SCI Support Centers' primary function of facilitating the execution of corporate strategies includes maintaining and directing a single, integrated set of operations across the SCI

1  network.

2  57.    Upon information and belief, including defendants' admissions, the SCI

3  Support Centers are responsible for, and subject to, centralized management directions and

4  decisions.

5  58.    The SCI Support Centers are owned, directly or indirectly, by defendant SCI.

6  Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI

7  Cooperative that is owned by the SCI Support Centers.

8  59.    Upon information and belief, the SCI Support Centers are part of an

9  extensive and complex network of corporations which SCI has created and owns in an

10  effort to operate its nationwide locations in a unified, consistent manner.  This network

11  promotes a fraud or injustice, in that it attempts to avoid liability for paying its common

12  employees and prevents employees from accurately identifying their employers.

13  60.    Because the SCI Support Centers have authority to hire or fire employees,

14  provide day-to-day support regarding human resources issues, including the hiring and

15  firing of employees, and control the drafting and enforcement of the policies which govern

16  the hiring and firing of employees, the SCI Support Centers have the power to hire and fire

17  employees.

18  61.    Because the SCI Support Centers have authority to establish employees'

19  work schedules and/or conditions of employment, provide day-to-day support regarding

20  human resources issues, including employees' work schedules and/or conditions of

21  employment, control the drafting and enforcement of the policies which govern

22  employees' schedules and/or conditions of employment, and administer employees'

23  benefit programs, the SCI Support Centers supervise and control employees' work

24  schedules and/or conditions of employment.

25  62.    Because the SCI Support Centers have authority to establish employees' rate

26  and method of payment and centrally control payroll functions, the SCI Support Centers

27  determine the rate and method of employees' payment.

63.    Because the SCI Support Centers play a central role in the keeping of centralized records, including a database, regarding employees' employment records, the SCI Support Centers maintain employees' employment records.

64.    For all of the foregoing reasons, among others, including the SCI Support Centers' services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, the SCI Support Centers provide centralized control over defendants' labor relations.

65.    Because the SCI Support Centers provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employee's benefit programs, they are affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in relation to the employment of Plaintiffs.

66.    Because the SCI Support Centers are actively involved in the creation of the illegal policies complained of in this case, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, the SCI Support Centers actively participate in the violations complained of in this action.

67.    Because the SCI Support Centers, together with the SCI Cooperative, are owned by SCI, directly or indirectly, the SCI Support Centers and other defendants share common ownership.

68.    Because the SCI Support Centers are subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Support Centers and other defendants share common management.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

69.    Because the SCI Support Centers are subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Support Centers and other defendants share functional integration of operations.

70.    Because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to employees, centrally control the payroll functions related to employees' employment, provide services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, and are subject to a network-wide single line management model, the SCI Support Centers are not completely disassociated with respect to employees' employment.

71.    The SCI Support Centers may be deemed to share control of employees, directly or indirectly, by reason of the fact that they are under common control with the SCI Cooperative and the funeral home locations because they are all owned by SCI, directly or indirectly, and because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to Plaintiffs, centrally control the payroll functions related to employees' employment, provide services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, and are subject to a network-wide single line management model.

72.    Because the SCI Support Centers are part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Support Centers are an alter ego of SCI and the other entities SCI owns.

73.    Based upon the foregoing, the SCI Support Centers are liable to Plaintiffs because of their active role in operating the business, their role in the violations

12

1  complained of in this action, their status as employer, joint employer, single employer,
2  alter ego, or otherwise according to federal and state common law.

3  ***The SCI Cooperative Is Liable to Plaintiffs***

4      74.    The SCI Cooperative is a Delaware corporation which is owned, directly or
5  indirectly, by SCI and the SCI Support Centers.

6      75.    The SCI Cooperative, through agreements with the SCI Support Centers,
7  "provide[s] additional human resources services and support" for the funeral home
8  locations. Appendix B at ¶4.

9      76.    "[O]n-site training at funeral homes and cemeteries is provided by field
10 personnel and training departments affiliated with" the SCI Cooperative.  Appendix B at
11 ¶6.

12     77.    The SCI Cooperative publishes and maintains the weekly newsletter
13 "Frontline," and the "Global Village" intranet site, publications through which defendants
14 communicate with their nationwide employees.  Appendix B at ¶7.

15     78.    The SCI Cooperative administers benefits by "contract[ing] with third-party
16 benefit providers to respond to questions related to day-to-day benefits services, such as
17 local provider questions, access to online services, and benefits provider contact
18 information.  To the extent that those third-party providers cannot respond to questions,
19 [the SCI Cooperative] will respond." Appendix C at ¶5.

20     79.    The SCI Cooperative maintains a payroll department and "a database that
21 contains information on current and former employees of SCI subsidiaries."  Appendix D
22 at ¶3.

23     80.    Defendants' public filings reflect that SCI and the entities it owns directly or
24 indirectly, including the SCI Cooperative, employ "a single line management model in an
25 effort to streamline the organization and ensure that operational efficiencies [are] achieved
26 throughout the SCI network."

27     81.    Defendants' public filings reflect that the funeral home locations that SCI

13

owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

82.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of plaintiffs' overtime.

83.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of plaintiffs' overtime.

84.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

85.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, plays a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

86.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents,

1    make decisions that set employees' schedules, hours, and standard benefit levels.

2        87.    Upon information and belief, including defendants' admissions, the SCI
3    Cooperative, in concert with others, has the authority to, and does, through its agents,
4    make decisions that set standard pay scales.

5        88.    Upon information and belief, including defendants' admissions, the SCI
6    Cooperative determines and drafts policies, answers questions regarding human resources
7    issues and policies, resolves issues regarding policies and their application, counsels
8    locations on human resources issues, and communicates with employees about company
9    issues and human resources issues and policies, including issues related to hours worked
10   and payment for such hours worked.

11       89.    Upon information and belief, including defendants' admissions, the SCI
12   Cooperative provides employees with information regarding benefit plans and providers,
13   oversees the implementation and execution of benefit plans, retains ultimate authority for
14   providing information and responding to questions regarding the benefit plans, maintains
15   records regarding the benefit plans, makes determinations, either directly or indirectly,
16   regarding the scope and amount of benefits available to employees, and is responsible for
17   providing employees, directly or indirectly, with information regarding their benefits,
18   including benefits statements and information regarding their 401(k) plans.

19       90.    Upon information and belief, including defendants' admissions, the SCI
20   Cooperative maintains payroll records regarding employees and, in concert with others, the
21   SCI Cooperative has the authority to, and does, through its agents, make decisions
22   concerning the issuance of payroll checks, directly or indirectly.

23       91.    Upon information and belief, including defendants' admissions, the SCI
24   Cooperative's functions in providing services and support regarding human resources,
25   training, benefits administration, and payroll include a function maintaining and directing a
26   single, integrated set of operations across the SCI network.

27       92.    Upon information and belief, including defendants' admissions, the SCI

15

1   Cooperative is responsible for, and subject to, centralized management directions and
2   decisions.

3        93.    The SCI Cooperative is owned, directly or indirectly, by defendants SCI and
4   the SCI Support Centers.  Additionally, SCI owns the SCI Support Centers, directly or
5   indirectly.

6        94.    Upon information and belief, the SCI Cooperative is part of an extensive and
7   complex network of corporations which SCI has created and owns in an effort to operate
8   its nationwide locations in a unified, consistent manner.  This network promotes a fraud or
9   injustice, in that it attempts to avoid liability for paying its common employees and
10  prevents employees from accurately identifying their employers.

11       95.    Because the SCI Cooperative has authority to hire or fire Plaintiffs, provides
12  day-to-day support regarding human resources issues, including the hiring and firing of
13  Plaintiffs, and controls the drafting and enforcement of the policies which govern the
14  hiring and firing of employees, the SCI Cooperative has the power to hire and fire
15  employees.

16       96.    Because the SCI Cooperative has authority to establish employees' work
17  schedules and/or conditions of employment, provides day-to-day support regarding human
18  resources issues, including employees' work schedules and/or conditions of employment,
19  controls the drafting and enforcement of the policies which govern employees' schedules
20  and/or conditions of employment, and administers employees' benefit programs, the SCI
21  Cooperative supervises and controls employees' work schedules and/or conditions of
22  employment.

23       97.    Because the SCI Cooperative has authority to establish employees' rate and
24  method of payment and centrally control payroll functions, the SCI Cooperative
25  determines the rate and method of employees' payment.

26       98.    Because the SCI Cooperative keeps centralized records, including a
27  database, regarding employees' employment records, the SCI Cooperative maintains

1   employees' employment records.

2       99.  For all of the foregoing reasons, among others, including the SCI

3   Cooperative's human resources services and support, training function, publication of

4   communications across the SCI network, administration of benefit programs, and

5   maintenance of the payroll department, the SCI Cooperative provides centralized control

6   over defendants' labor relations.

7       100.  Because the SCI Cooperative provides day-to-day support regarding human

8   resources issues, including employees' work schedules and/or conditions of employment,

9   controls the drafting and enforcement of the policies which govern employees' schedules

10   and/or conditions of employment, and administers employees' benefit programs, it is

11   affirmatively, directly, and actively involved in operations of the defendants' business

12   functions, particularly as it relates to the employment of the plaintiffs.

13       101.  Because the SCI Cooperative is actively involved in the creation of the

14   illegal policies complained of in this case, actively advises defendants' agents on the

15   enforcement of the illegal policies complained of in this case and actively ensures

16   defendants' compliance or non-compliance with federal law, including the requirements of

17   the FLSA, ERISA and RICO, the SCI Cooperative actively participates in the violations

18   complained of in this action.

19       102.  Because the SCI Cooperative, together with the SCI Support Centers, is

20   owned by SCI, directly or indirectly, the SCI Cooperative and other defendants share

21   common ownership.

22       103.  Because the SCI Cooperative is subject to centralized management directions

23   and decisions that govern the entities owned by SCI, including a single line management

24   model applicable to the entire SCI network, the SCI Cooperative and other defendants

25   share common management.

26       104.  Because the SCI Cooperative is subject to a single line management model

27   applicable to the entire SCI network for the purpose of streamlining the organization and

1  achieving operational efficiencies, the SCI Cooperative and other defendants share
2  functional integration of operations.

3      105.   Because the SCI Cooperative controls the drafting and enforcement of the
4  employment and human resources policies related to employees, centrally controls the
5  payroll functions related to employees' employment, provides services and support with
6  respect to human resources, training, and nationwide communications with employees, and
7  is subject to a network-wide single line management model, the SCI Cooperative is not
8  completely disassociated with respect to employees' employment.

9      106.   The SCI Cooperative may be deemed to share control of employees, directly
10  or indirectly, by reason of the fact that it is under common control with the SCI Support
11  Centers and the funeral home locations because they are all owned by SCI, directly or
12  indirectly, and because the SCI Cooperative controls the drafting and enforcement of the
13  employment and human resources policies related to employees, centrally controls the
14  payroll functions related to employees' employment, provides services and support with
15  respect to human resources, training, and nationwide communications with employees, and
16  is subject to a network-wide single line management model.

17      107.   Because the SCI Cooperative is part of an extensive and complex network
18  through which SCI promotes a fraud or injustice in attempting to shield from liability itself
19  and other entities which are responsible for employees' employment and in preventing
20  employees from accurately determining the identity of their employers, the SCI
21  Cooperative is an alter ego of SCI and the other entities SCI owns.

22      108.   Based upon the foregoing, the SCI Cooperative is liable to Plaintiffs because
23  of its active role in operating the business, its role in the violations complained of in this
24  action, its status as employer, joint employer, single employer, alter ego, or otherwise
25  according to federal and state common law.

26  **SCI Is Liable to Plaintiffs**

27      109.   Defendant SCI is a corporation with its headquarters being at 1929 Allen

18

1   Parkway, Houston, Texas 77019.

2       110.   SCI owns, directly or indirectly, various funeral home locations and various

3   other companies or entities, including the SCI Cooperative and the SCI Support Centers, in

4   a nationwide enterprise.

5       111.   Defendants' public filings reflect that SCI and the entities it owns directly or

6   indirectly, including the SCI Cooperative and the SCI Support Centers, employ "a single

7   line management model in an effort to streamline the organization and ensure that

8   operational efficiencies [are] achieved throughout the SCI network."

9       112.   Defendants' public filings reflect that the funeral home locations that SCI

10   owns, directly or indirectly, "are organized into various regions and within each region the

11   funeral home locations share common resources including personnel, preparation services

12   and vehicles."

13       113.   Upon information and belief, including defendants' admissions, at all

14   relevant times all functions at all entities in the SCI network, including the SCI

15   Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

16       114.   Upon information and belief, including defendants' admissions, at all

17   relevant times SCI maintained control and authority, directly or indirectly, over all

18   functions at the entities in the SCI network, including the SCI Cooperative and the SCI

19   Support Centers.

20       115.   Upon information and belief, including defendants' admissions, SCI, in

21   concert with others, has the authority to, and does, through its agents, make decisions

22   concerning the creation of the illegal policies complained of in this case, including, but not

23   limited to, the On Call Pay Policy, Community Work Policy, Training Compensation

24   Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for

25   Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the

26   calculation of Plaintiffs' overtime.

27       116.   Upon information and belief, including defendants' admissions, SCI, in

19

concert with others, has the authority to, and does, through its agents, make decisions concerning advising defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

117.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

118.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

119.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' schedules, hours and standard benefit levels.

120.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning standard pay scales.

121.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the determination and drafting of policies, answering questions regarding human resources issues and policies, resolving issues regarding policies and their application, counseling locations on human resources issues, and communicating with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

122.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning providing employees with information regarding benefit plans and providers, overseeing the implementation and execution of benefit plans, providing information and responding to questions regarding the benefit plans, maintaining records regarding the benefit plans, making determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

123.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

124.    SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning maintaining and directing a single, integrated set of operations across the SCI network.

125.    Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized management directions and decisions.

126.    Upon information and belief, SCI is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

127.    Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning hiring or firing employees, providing support regarding human resources issues, including the hiring and firing of Plaintiffs, and controlling the drafting and enforcement of the policies which govern the hiring and firing

1    of employees, SCI has the power to hire and fire employees.

2        128.    Because SCI, in concert with others, has the authority to, and does, through

3    its agents, make decisions concerning employees' work schedules and/or conditions of

4    employment, providing support regarding human resources issues, including Plaintiffs'

5    work schedules and/or conditions of employment, controlling the drafting and enforcement

6    of the policies which govern employees' schedules and/or conditions of employment, and

7    administering employees' benefit programs, SCI supervises and controls employees' work

8    schedules and/or conditions of employment.

9        129.    Because SCI, in concert with others, has the authority to, and does, through

10   its agents, make decisions concerning employees' rate and method of payment and

11   centrally controlling payroll functions, SCI determines the rate and method of employees'

12   payment.

13       130.    Because SCI, in concert with others, has the authority to, and does, through

14   its agents, make decisions concerning centralized records, including a database, regarding

15   employees' employment records, SCI maintains employees' employment records.

16       131.    For all of the foregoing reasons, among others, including SCI's authority and

17   exercise of authority with respect to human resources services and support, training

18   function, publication of communications across its network, administration of benefit

19   programs, and maintenance of the payroll department, SCI provides centralized control

20   over defendants' labor relations.

21       132.    Because SCI, in concert with others, has the authority to, and does, through

22   its agents, make decisions concerning human resources issues, including employees' work

23   schedules and/or conditions of employment, controlling the drafting and enforcement of

24   the policies which govern employees' schedules and/or conditions of employment, and

25   administering employees' benefit programs, it plays a central role in operations of

26   defendants' business functions, particularly in regards to the employment of Plaintiffs.

27       133.    Because SCI, in concert with others, has the authority to, and does, through

its agents, make decisions concerning the illegal policies complained of in this case, advising of defendants' agents on the enforcement of the illegal policies complained of in this case and ensuring defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, SCI plays a central role in the violations complained of in this action.

134.    Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI Support Centers, SCI and the other defendants share common ownership.

135.    Because SCI maintains and is subject to centralized management directions and decisions that govern the entities it owns, directly or indirectly, including a single line management model applicable to the entire SCI network, SCI and the other defendants share common management.

136.    Because SCI maintains and is subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, SCI and the other defendants share functional integration of operations.

137.    Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning drafting and enforcing employment and human resources policies related to employees, centrally controlling the payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and is subject to a network-wide single line management model, SCI is not completely disassociated with respect to employees' employment.

138.    SCI may be deemed to share control of employees, directly or indirectly, by reason of the fact that it is under common control with the SCI Cooperative, the SCI Support Centers and the funeral home locations, all of which are owned by SCI, directly or indirectly, and because SCI plays a central role in the drafting and enforcement of the employment and human resources policies related to employees, centrally controlling the

1  payroll functions related to employees' employment, providing services and support with
2  respect to human resources, training, and nationwide communications with employees, and
3  maintains and is subject to a network-wide single line management model.

4      139.   Because SCI maintains and is part of an extensive and complex network
5  through which it promotes a fraud or injustice in attempting to shield from liability itself
6  and other entities which are responsible for employees' employment and in preventing
7  employees from accurately determining the identity of their employers, SCI is an alter ego
8  of the other defendants and the other entities it owns.

9      140.   Based upon the foregoing, SCI is liable to employees because of its central
10  role in operating the business, its role in the violations complained of in this action, its
11  status as employer, joint employer, single employer, alter ego, or otherwise according to
12  federal and state common law.

13  ***Jane D. Jones Is Liable to Plaintiffs***

14      141.   Defendant Jane D. Jones has acted as Vice President of Human Resources
15  for SCI since 2005.

16      142.   Defendants' public filings reflect that Ms. Jones "oversees human resources,
17  training and education, and payroll and commission services – activities that assist
18  approximately 20,000 employees in North America."

19      143.   Upon information and belief, including defendants' admissions, Ms. Jones is
20  responsible for, provides direction and control over, and is authorized to direct all aspects
21  of human resources functions across SCI's network.

22      144.   Upon information and belief, including defendants' admissions, due in part
23  to her role of overseeing human resources, training and education, and payroll and
24  commission services, in concert with others, Ms. Jones is actively involved in the creation
25  of the illegal policies complained of in this case, including, but not limited to, the On Call
26  Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs
27  Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of
2  Plaintiffs' overtime.

3       145.   Upon information and belief, including defendants' admissions, due in part
4  to her role of overseeing human resources, training and education, and payroll and
5  commission services, in concert with others, Ms. Jones actively advises defendants' agents
6  on the enforcement of the illegal policies complained of in this case, including, but not
7  limited to, the On Call Pay Policy, Community Work Policy, Training Compensation
8  Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for
9  Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the
10  calculation of Plaintiffs' overtime.

11       146.   Upon information and belief, including defendants' admissions, due in part
12  to her role of overseeing human resources, training and education, and payroll and
13  commission services, in concert with others, Ms. Jones actively ensures defendants'
14  compliance or non-compliance with federal law, including the requirements of the FLSA,
15  ERISA and RICO.

16       147.   Upon information and belief, including defendants' admissions, Ms. Jones,
17  in concert with others, is actively involved in reviewing and counseling defendants
18  regarding employment decisions, including hiring and firing of Plaintiffs.

19       148.   Upon information and belief, including defendants' admissions, Ms. Jones,
20  in concert with others, is actively involved in decisions that set employees' schedules,
21  hours and standard benefit levels.

22       149.   Upon information and belief, including defendants' admissions, Ms. Jones,
23  in concert with others, is actively involved decisions that set standard pay scales.

24       150.   Upon information and belief, including defendants' admissions, Ms. Jones,
25  in concert with others, is actively involved in the determination and drafting of human
26  resources policies, the resolution of issues and disputes regarding policies and their
27  application, the counseling locations receive regarding human resources issues, and

COMPLAINT— Collective Action. DEMAND FOR JURY TRIAL

1   communications with employees about human resources issues and policies.

2       151.   Upon information and belief, including defendants' admissions, Ms. Jones,

3   in concert with others, is actively involved in defendants' employment and human

4   resources records, including the systems for keeping and maintaining those records.

5       152.   Upon information and belief, including defendants' admissions, Ms. Jones,

6   in concert with others, is actively involved in training and education functions across SCI's

7   network.

8       153.   Upon information and belief, including defendants' admissions, Ms. Jones,

9   in concert with others, is actively involved in determining the type and scope of training

10  employees must attend as well as any compensation they receive for attending training.

11      154.   Upon information and belief, including defendants' admissions, Ms. Jones,

12  in concert with others, is actively involved in payroll and commission functions across

13  SCI's network.

14      155.   Upon information and belief, including defendants' admissions, Ms. Jones,

15  in concert with others, is actively involved in the system for keeping and maintaining

16  employees' payroll records, the timing and method with which payment is conveyed to

17  employees, and the manner and method in which employees receive payroll information

18  including their payroll checks.

19      156.   Upon information and belief, including defendants' admissions, Ms. Jones,

20  in concert with others, is actively involved in benefit plans across SCI's network.

21      157.   Upon information and belief, including defendants' admissions, Ms. Jones,

22  in concert with others, is actively involved in determining the type and scope of benefits

23  available to employees, the method and manner in which information regarding those

24  plans is conveyed to employees, and the system for keeping and maintaining records

25  related to employees' benefits.

26      158.   Because Ms. Jones has authority to hire or fire employees, provide and direct

27  support regarding human resources issues, including the hiring and firing of employees,

1  and control the drafting and enforcement of the policies which govern the hiring and firing
2  of employees, Ms. Jones has the power to hire and fire employees.

3      159.  Because Ms. Jones has authority to establish work schedules and/or
4  conditions of employment, provide and direct support regarding human resources issues,
5  including work schedules and/or conditions of employment, control the drafting and
6  enforcement of the policies which govern employees' schedules and/or conditions of
7  employment, establish the type and scope of training employees receive, and administer
8  employees' benefit programs, including standard benefit levels and the type and scope of
9  benefits available to employees, Ms. Jones supervises and controls employees' work
10  schedules and/or conditions of employment.

11      160.  Because Ms. Jones has authority to establish employees' rate and method of
12  payment and centrally control payroll functions, including standard pay scales, the
13  provision of payroll information, and the timing of payment, Ms. Jones determines the rate
14  and method of employees' payment.

15      161.  Because Ms. Jones has authority with respect to defendants' centralized
16  records, including a database regarding employees' employment records, and systems for
17  keeping and maintaining payroll, benefits, and other employment-related records, Ms.
18  Jones maintains employees' employment records.

19      162.  Because Ms. Jones provides day-to-day support regarding human resources
20  issues, including employees' work schedules and/or conditions of employment, controls
21  the drafting and enforcement of the policies which govern employees' schedules and/or
22  conditions of employment, and administers employees' benefit programs, she is
23  affirmatively, directly, and actively involved in operations of defendants' business
24  functions, particularly in regards to the employment of Plaintiffs.

25      163.  Because Ms. Jones is actively involved in the creation of the illegal policies
26  complained of in this case, actively advises defendants' agents on the enforcement of the
27  illegal policies complained of in this case and actively ensures defendants' compliance or

1  non-compliance with federal law, including the requirements of the FLSA, ERISA and

2  RICO, Ms. Jones actively participates in the violations complained of in this action.

3      164.   Based upon the foregoing, Ms. Jones is liable to Plaintiffs because of her

4  active role in operating the business, her role in the violations complained of in this action,

5  her status as an employer, or otherwise according to federal and state common law.

6  ***Gwen Petteway Is Liable to Plaintiffs***

7      165.   Defendant Gwen Petteway has acted as Human Resources Director of

8  defendant SCI Houston since 2005.

9      166.   Ms. Petteway's job responsibilities include familiarity "with the human

10  resources services of the subsidiary and affiliate companies of SCI, as well as training and

11  benefits provided to those companies." Appendix C at ¶3.

12      167.   As Human resources Director, Ms. Petteway's job responsibilities include

13  providing and/or supervising "day-to-day human resources services and support for

14  [defendants'] funeral home locations." Appendix C at ¶3.

15      168.   Upon information and belief, including defendants' admissions, due in part

16  to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively

17  involved, and plays a central role, in the creation of the illegal policies complained of in

18  this case, including, but not limited to, the On Call Pay Policy, Community Work Policy,

19  Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction

20  Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the

21  policy regarding the calculation of Plaintiffs' overtime.

22      169.   Upon information and belief, including defendants' admissions, due in part

23  to her role as Human Resources Director, Ms. Petteway, in concert with others, actively,

24  and in a central role, advises defendants' agents on the enforcement of the illegal policies

25  complained of in this case, including, but not limited to, the On Call Pay Policy,

26  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,

27  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work

1    Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

2        170.    Upon information and belief, including defendants' admissions, due in part

3    to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively

4    involved, and plays a central role, in ensuring defendants' compliance or non-compliance

5    with federal law, including the requirements of the FLSA, ERISA and RICO.

6        171.    Upon information and belief, including defendants' admissions, Ms.

7    Petteway, in concert with others, is actively involved, and plays a central role, in human

8    resources functions across SCI's network.

9        172.    Upon information and belief, including defendants' admissions, Ms.

10   Petteway, in concert with others, is actively involved, and plays a central role, in day-to-

11   day human resources services and support.

12       173.    Upon information and belief, including defendants' admissions, Ms.

13   Petteway, in concert with others, is actively involved, and plays a central role, in reviewing

14   and counseling defendants regarding employment decisions, including hiring and firing of

15   Plaintiffs.

16       174.    Upon information and belief, including defendants' admissions, Ms.

17   Petteway, in concert with others, is actively involved, and plays a central role, in decisions

18   that set employee's schedules, hours and standard benefit levels.

19       175.    Upon information and belief, including defendants' admissions, Ms.

20   Petteway, in concert with others, is actively involved, and plays a central role, in decisions

21   that set standard pay scales.

22       176.    Upon information and belief, including defendants' admissions, Ms.

23   Petteway, in concert with others, is actively involved, and plays a central role, in

24   defendants' human resources policies, resolving issues and disputes regarding policies and

25   their applications, counseling locations receive regarding human resources issues,

26   providing day-to-day services and support regarding human resources issues, and

27   communications with employees about human resources issues and policies.

177.    Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

178.    Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in training and education functions across SCI's network.

179.    Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that determine the type and scope of training employees must attend as well as any compensation they receive for attending training.

180.    Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in payroll and commission functions across SCI's network.

181.    Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

182.    Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in defendants' benefit plans.

183.    Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

184.    Because Ms. Petteway has authority to hire or fire employees, provide and

1   direct support regarding human resources issues, including the hiring and firing of

2   Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring

3   and firing of employees, Ms. Petteway has the power to hire and fire employees.

4       185.   Because Ms. Petteway has authority to establish work schedules and/or

5   conditions of employment, provide and direct support regarding human resources issues,

6   including work schedules and/or conditions of employment, control the drafting and

7   enforcement of the policies which govern employees' schedules and/or conditions of

8   employment, establish the type and scope of training employees receive, and administer

9   employees' benefit programs, including standard benefit levels and the type and scope of

10  benefits available to employees, Ms. Petteway supervises and controls employees' work

11  schedules and/or conditions of employment.

12      186.   Because Ms. Petteway has authority to establish employees' rate and method

13  of payment and centrally control payroll functions, including standard pay scales, the

14  provision of payroll information, and the timing of payment, Ms. Petteway determines the

15  rate and method of employees' payment.

16      187.   Because Ms. Petteway has authority with respect to defendants' centralized

17  records, including a database regarding employees' employment records, and systems for

18  keeping and maintaining payroll, benefits, and other employment-related records, Ms.

19  Petteway maintains employees' employment records.

20      188.   Because Ms. Petteway is actively involved, or plays a central role, in day-to-

21  day support regarding human resources issues, including employees' work schedules

22  and/or conditions of employment, controls the drafting and enforcement of the policies

23  which govern employees' schedules and/or conditions of employment, and administers

24  employees' benefit programs, she is affirmatively, directly, and actively involved in

25  operations of defendants' business functions, particularly in regards to the employment of

26  Plaintiffs.

27      189.   Because Ms. Petteway is actively involved, or plays a central role, in the

31

1    creation of the illegal policies complained of in this case, actively advises defendants'

2    agents on the enforcement of the illegal policies complained of in this case and actively

3    ensures defendants' compliance or non-compliance with federal law, including the

4    requirements of the FLSA, ERISA and RICO, she actively participates, or plays a central

5    role, in the violations complained of in this action.

6        190.    Based upon the foregoing, Ms. Petteway is liable to Plaintiffs because of her

7    status as an employer according to federal and state common law.

8    ***Thomas Ryan Is Liable to Plaintiffs***

9        191.    Defendant Thomas Ryan has acted as President and Chief Executive Officer

10   of SCI since in or around 2003.

11       192.    Upon information and belief, including defendants' admissions, Mr. Ryan's

12   responsibilities include actively managing SCI and its network.

13       193.    Upon information and belief, including defendants' admissions, in concert

14   with others, Mr. Ryan has the authority to, and does, make decisions that concern the

15   policies defendants adopt and the implementation of those policies.

16       194.    Upon information and belief, including defendants' admissions, in concert

17   with others, Mr. Ryan has the authority to, and does, make decisions that concern

18   defendants' operations, including functions related to employment, human resources,

19   training, payroll, and benefits.

20       195.    Upon information and belief, including defendants' admissions, due in part

21   to his role as President and Chief Executive Officer, Mr. Ryan is actively involved in the

22   creation of the illegal policies complained of in this case, including, but not limited to, the

23   On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs

24   Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

25   Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of

26   Plaintiffs' overtime.

27       196.    Upon information and belief, including defendants' admissions, due in part

to his role as President and Chief Executive Officer, Mr. Ryan actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

197.    Upon information and belief, including defendants' admissions, due in part to his role as President and Chief Executive Officer, Mr. Ryan actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

198.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

199.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

200.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern standard pay scales.

201.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

202.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern

33

1 | defendants' employment and human resources records, including the systems for keeping
2 | and maintaining those records.

3 |     203.   Upon information and belief, including defendants' admissions, in concert
4 | with others, Mr. Ryan has the authority to, and does, make decisions that concern training
5 | and education functions across SCI's network.

6 |     204.   Upon information and belief, including defendants' admissions, in concert
7 | with others, Mr. Ryan has the authority to, and does, make decisions that concern the type
8 | and scope of training employees must attend as well as any compensation they receive for
9 | attending training.

10 |     205.   Upon information and belief, including defendants' admissions, in concert
11 | with others, Mr. Ryan has the authority to, and does, make decisions that concern payroll
12 | and commission functions across SCI's network.

13 |     206.   Upon information and belief, including defendants' admissions, in concert
14 | with others, Mr. Ryan has the authority to, and does, make decisions that concern the
15 | system for keeping and maintaining employees' payroll records, the timing and method
16 | with which payment is conveyed to employees, and the manner and method in which
17 | employees receive payroll information including their payroll checks.

18 |     207.   Upon information and belief, including defendants' admissions, in concert
19 | with others, Mr. Ryan has the authority to, and does, make decisions that concern benefit
20 | plans across SCI's network.

21 |     208.   Upon information and belief, including defendants' admissions, in concert
22 | with others, Mr. Ryan has the authority to, and does, make decisions that concern the type
23 | and scope of benefits available to employees, the method and manner in which information
24 | regarding those plans is conveyed to employees, and the system for keeping and
25 | maintaining records related to employees' benefits.

26 |     209.   Because Mr. Ryan has authority to hire or fire employees, provide and direct
27 | support regarding human resources issues, including the hiring and firing of Plaintiffs, and

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  control the drafting and enforcement of the policies which govern the hiring and firing of
2  employees, Mr. Ryan has the power to hire and fire employees.

3  210.  Because Mr. Ryan has authority to establish work schedules and/or
4  conditions of employment, provide and direct support regarding human resources issues,
5  including work schedules and/or conditions of employment, control the drafting and
6  enforcement of the policies which govern employees' schedules and/or conditions of
7  employment, establish the type and scope of training employees receive, and administer
8  employees' benefit programs, including standard benefit levels and the type and scope of
9  benefits available to employees, Mr. Ryan supervises and controls employees' work
10 schedules and/or conditions of employment.

11 211.  Because Mr. Ryan has authority to establish employees' rate and method of
12 payment and centrally control payroll functions, including standard pay scales, the
13 provision of payroll information, and the timing of payment, Mr. Ryan determines the rate
14 and method of employees' payment.

15 212.  Because Mr. Ryan has authority with respect to defendants' centralized
16 records, including a database regarding employees' employment records, and systems for
17 keeping and maintaining payroll, benefits, and other employment-related records, Mr.
18 Ryan maintains employees' employment records.

19 213.  Because Mr. Ryan provides day-to-day support regarding human resources
20 issues, including employees' work schedules and/or conditions of employment, controls
21 the drafting and enforcement of the policies which govern employees' schedules and/or
22 conditions of employment, and administers employees' benefit programs, he is
23 affirmatively, directly, and actively involved in operations of the defendants' business
24 functions, particularly in regards to the employment of Plaintiffs.

25 214.  Because Mr. Ryan is actively involved in the creation of the illegal policies
26 complained of in this case, actively advises defendants' agents on the enforcement of the
27 illegal policies complained of in this case and actively ensures defendants' compliance or

1    non-compliance with federal law, including the requirements of the FLSA, ERISA and
2    RICO, he actively participates in the violations complained of in this action.

3         215.   Based upon the foregoing, Mr. Ryan is liable to Plaintiffs because of his
4    active role in operating the business, his status as an employer, or according to federal and
5    state common law.

6    ***Curtis Briggs Is Liable to Plaintiffs***

7         216.   Defendant Curtis Briggs is President and/or Vice President of various entities
8    owned by SCI, some of which are also related to the SCI Cooperative and/or the SCI
9    Support Centers.

10        217.   Mr. Briggs is Vice President for the General Partner of SCI Eastern; Vice
11   President for the General Partner of SCI Houston; President and/or Vice President of the
12   SCI Cooperative; President and/or Vice President of SCI Western.

13        218.   Additionally, Mr. Briggs has executed employment contracts with various
14   executives in his role as Vice President of SCI Executive Services, Inc.

15        219.   Upon information and belief, including defendants' admissions, Mr. Briggs's
16   responsibilities include actively managing the entities for which he is an officer and the
17   defendants' network.

18        220.   Upon information and belief, including defendants' admissions, in concert
19   with others, Mr. Briggs has the authority to, and does, make decisions that concern the
20   policies defendants adopt and for the implementation of those policies.

21        221.   Upon information and belief, including defendants' admissions, in concert
22   with others, Mr. Briggs has the authority to, and does, make decisions that concern
23   defendants' operations, including functions related to employment, human resources,
24   training, payroll, and benefits.

25        222.   Upon information and belief, including defendants' admissions, due in part
26   to his numerous roles, Mr. Briggs is actively involved in the creation of the illegal policies
27   complained of in this case, including, but not limited to, the On Call Pay Policy,

Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

223.   Upon information and belief, including defendants' admissions, due in part to his numerous roles, Mr. Briggs actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

224.   Upon information and belief, including defendants' admissions, due in part to his numerous roles, Mr. Briggs actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

225.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

226.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the setting of employees' schedules, hours and standard benefit levels.

227.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern  the setting of standard pay scales.

228.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern defendants' human resources policies, issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and

1    communications with employees about human resources issues and policies.

2        229.   Upon information and belief, including defendants' admissions, in concert

3    with others, Mr. Briggs has the authority to, and does, make decisions that concern

4    defendants' employment and human resources records, including the systems for keeping

5    and maintaining those records.

6        230.   Upon information and belief, including defendants' admissions, in concert

7    with others, Mr. Briggs has the authority to, and does, make decisions that concern training

8    and education functions across defendants' network.

9        231.   Upon information and belief, including defendants' admissions, in concert

10    with others, Mr. Briggs has the authority to, and does, make decisions that concern the

11    type and scope of training employees must attend as well as any compensation they receive

12    for attending training.

13        232.   Upon information and belief, including defendants' admissions, in concert

14    with others, Mr. Briggs has the authority to, and does, make decisions that concern payroll

15    and commission functions across defendants' network.

16        233.   Upon information and belief, including defendants' admissions, in concert

17    with others, Mr. Briggs has the authority to, and does, make decisions that concern the

18    system for keeping and maintaining employees' payroll records, the timing and method

19    with which payment is conveyed to employees, and the manner and method in which

20    employees receive payroll information including their payroll checks.

21        234.   Upon information and belief, including defendants' admissions, in concert

22    with others, Mr. Briggs has the authority to, and does, make decisions that concern benefit

23    plans across defendants' network.

24        235.   Upon information and belief, including defendants' admissions, in concert

25    with others, Mr. Briggs has the authority to, and does, make decisions that concern the

26    type and scope of benefits available to employees, the method and manner in which

27    information regarding those plans is conveyed to employees, and the system for keeping

1   and maintaining records related to employees' benefits.

2       236.  Because Mr. Briggs has authority to hire or fire employees, provide and

3   direct support regarding human resources issues, including the hiring and firing of

4   employees, and control the drafting and enforcement of the policies which govern the

5   hiring and firing of employees, Mr. Briggs has the power to hire and fire employees.

6       237.  Because Mr. Briggs has authority to establish work schedules and/or

7   conditions of employment, provide and direct support regarding human resources issues,

8   including work schedules and/or conditions of employment, control the drafting and

9   enforcement of the policies which govern employees' schedules and/or conditions of

10  employment, establish the type and scope of training employees receive, and administer

11  employees' benefit programs, including standard benefit levels and the type and scope of

12  benefits available to employees, Mr. Briggs supervises and controls employees' work

13  schedules and/or conditions of employment.

14      238.  Because Mr. Briggs has authority to establish employees' rate and method of

15  payment and centrally control payroll functions, including standard pay scales, the

16  provision of payroll information, and the timing of payment, Mr. Briggs determines the

17  rate and method of employees' payment.

18      239.  Because Mr. Briggs has authority with respect to defendants' centralized

19  records, including a database regarding employees' employment records, and systems for

20  keeping and maintaining payroll, benefits, and other employment-related records, Mr.

21  Briggs maintains employees' employment records.

22      240.  Because Mr. Briggs provides support regarding human resources issues,

23  including employees' work schedules and/or conditions of employment, controls the

24  drafting and enforcement of the policies which govern employees' schedules and/or

25  conditions of employment, and administers employees' benefit programs, he is

26  affirmatively, directly, and actively involved in operations of defendants' business

27  functions, particularly in regards to the employment of Plaintiffs.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

241.    Because Mr. Briggs is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, Mr. Briggs actively participates in the violations complained of in this action.

242.    Based upon the foregoing, Mr. Briggs is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to federal and state common law.

## VI.    **FACTUAL BACKGROUND**

243.    Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

244.    Defendants' policy and/or practice was to not compensate Plaintiffs for work they suffered or permitted Plaintiffs to perform.

245.    Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

246.    Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

247.    The failure to pay overtime is willful.

248.    Examples of defendants' policies and practices to deprive Plaintiffs of their earned wages and wage premiums are set forth below:

    a.    **Subclass A:**  Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed outside.

    b.    **Subclass B:**   Defendants implemented a "Community Work Policy."

Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

c. **Subclass C:** Defendants' implemented a "Training Compensation Policy." Under the policy, defendants suffered or permitted their employees to take various types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

d. **Subclass D:** Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

e. **Subclass E:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for meal breaks. Defendants did, however, suffer and permit employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

f. **Subclass F:** Defendants implemented a "Pre-Approval for Overtime Pay

41

Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted employees to work overtime and therefore, employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g. **Subclass G:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted employees to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew such time had been worked, it had not been "recorded."

h. **Subclass H:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

249. Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

250. More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

251. Defendants failed to keep accurate records of all time worked by employees. By failing to keep such records, defendants' records are legally insufficient to determine benefits.

252. Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits. Defendants, while acting as fiduciaries exercising discretion over the administration of the Plan, breached their duties to act

prudently and solely in the interest of the Plan's participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime or to investigate whether such hours should be credited. Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants' participation vesting and accrual of rights.

253. As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, any matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

254. Plaintiffs allege that Defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs out of their property and to convert Plaintiffs' property, including their wages and/or overtime pay (the "Scheme"). Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs their regular or statutorily required rate of pay for all hours worked in violation of federal law, employing the various policies described previously in this Complaint.

255. Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs. The Scheme involved depriving Plaintiffs of their lawful entitlement to overtime.

256. In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs or between defendants' business locations. These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

257. The payroll checks were false and deceptive because they mislead Plaintiffs about the amount of wages to which they were entitled, as well as their status and rights

1   under the FLSA. Plaintiffs relied to their detriment on the misleading payroll checks that
2   defendants mailed and those misleading documents were a proximate cause of Plaintiffs'
3   injuries.

4       258.    Defendants' predicate acts of mailing the misleading payroll checks in
5   furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C.
6   § 1961(5) based upon both the relationship between the acts and continuity over the period
7   of time of the acts. The relationship was reflected because the acts were connected to each
8   other in furtherance of the Scheme. Continuity was reflected by both the repeated nature
9   of the mailings during and in furtherance of the Scheme and the threat of similar acts
10  occurring in the future. The threat was reflected by the continuing and ongoing nature of
11  the acts.

12      259.    Defendants' predicate acts were related, because they reflected the same
13  purpose or goal (to retain wages and overtime pay due to Plaintiffs for the economic
14  benefit of defendants and members of the enterprise); results (retention of wages and
15  overtime pay); participants (defendants and other members of the enterprise); victims
16  (Plaintiffs); and methods of commission (the Scheme and other acts described in the
17  Complaint). The acts were interrelated and not isolated events, since they were carried out
18  for the same purposes in a continuous manner over a substantial period of time.

19      260.    At all relevant times, in connection with the Scheme, defendants acted with
20  malice, intent, knowledge, and in reckless disregard of Plaintiffs' rights.

21      261.    Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. §§
22  1961(3) and 1964.

23      262.    Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3)
24  and 1962(c).

25      263.    Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4)
26  and 1962(a), which was engaged in or the activities of which affected interstate and
27  foreign commerce.

1   264.   Each defendant received income from a pattern of conduct unlawful under

2   RICO, in which defendants participated through continuous instances of providing

3   Plaintiffs with misleading documents which defendants mailed and upon which Plaintiffs

4   relied to their detriment.

5   265.   Plaintiffs were injured in their business and property under 18 U.S.C. §

6   1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

7                                   **CLAIM I**

8                                    **FLSA**

9   266.   The preceding paragraphs are incorporated herein as if fully set forth herein.

10   267.   Defendants willfully violated their obligations under the FLSA and are liable

11   to Plaintiffs.

12                                  **CLAIM II**

13                                   **ERISA**

14   268.   The preceding paragraphs are incorporated herein as if fully set forth herein.

15   269.   Plaintiffs bring these claims under 29 U.S.C. § 1132(a)(3), which confers on

16   Plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

17   270.   Defendants failed to keep accurate records of all time worked by Plan

18   participants. By failing to keep such records, defendants' records are legally insufficient to

19   determine benefits. Defendants failed to keep records "sufficient to determine the benefits

20   due or which may become due" under the terms of the Plan as required by ERISA §

21   209(a)(1), 29 U.S.C. § 1059(a)(1).

22                                  **CLAIM III**

23                                   **ERISA**

24   271.   The preceding paragraphs are incorporated herein as if fully set forth herein.

25   272.   Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

26

27

## CLAIM IV

### RICO

273.    The preceding paragraphs are incorporated herein as if fully set forth herein.

274.    Plaintiffs bring these claims under 18 U.S.C. § 1964(c), which confers on private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C. § 1962.

275.    Defendants' conduct, and the conduct of other members of the enterprise, injured Plaintiffs by refusing to pay their regular or statutorily required rate of pay for all hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme to obtain Plaintiffs' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed.

**WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award of the value of Plaintiffs' unpaid wages;

(c)    liquidated, compensatory, consequential, punitive and treble damages;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

**JURY DEMAND**

Plaintiffs demand a jury to hear and decide all issues of fact.

Respectfully Submitted,
SCHLEIER LAW OFFICES, P.C.

Date: January 15, 2008

By: /s/ Tod F. Schleier

Tod F. Schleier
Bradley H. Schleier
3101 N. Central Avenue
Suite 1090
Phoenix, AZ 85012
Telephone: (602) 277-0157

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Annette Gifford, NY Attorney No. 4105870
Justin Cordello, NY Attorney No. 4131447
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256

Attorneys for Plaintiffs

47

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL