**EXHIBIT S**

| | |
|---|---|
| 1 | Sanford Jay Rosen, State Bar No. 62566 |
| 2 | Maria V. Morris, State Bar No. 223903<br>Lori E. Rifkin, State Bar No. 244081 |
| 3 | ROSEN, BIEN & GALVAN, LLP<br>315 Montgomery Street, Tenth Floor |
| 4 | San Francisco, CA 94104<br>Telephone: (415) 433-6830 |
| 5 | Facsimile: (415) 433-7104<br>srosen@rbg-law.com |
| 6 | Attorneys for Plaintiffs |
| 7 | [Additional Counsel Listed on Following Page] |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | | |
|---|---|---|
| 12 | CLAUDE BRYANT, CRAIG FULCHER, SANFORD LEVINE and THOMAS THOMPSON, on behalf of themselves and all employees similarly situated, | Case No. 3:07-cv-5696-SI |
| 13 | | **AMENDED COMPLAINT — Collective Action** |
| 14 | | **DEMAND FOR JURY TRIAL** |
| 15 | Plaintiffs, | |
| | - vs - | |
| 16 | | |
| 17 | ALDERWOODS GROUP, INC., PAUL A. HOUSTON, SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI EASTERN MARKET SUPPORT CENTER, L.P., SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., SCI HOUSTON MARKET SUPPORT CENTER, L.P, and JOHN DOES 1-3, | |
| 22 | Defendants. | |

AMENDED COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL
Case No. 3:07-cv-5696-SI

| | |
|---|---|
| 1 | Additional Attorneys for Plaintiffs, who will submit applications for admission *pro hac vice*: |
| 2 | |
| 3 | J. Nelson Thomas, NY Attorney No. 2579159<br>Patrick J. Solomon, NY Attorney No. 2716660<br>Michael J. Lingle, NY Attorney No. 3925765 |
| 4 | Annette Gifford, NY Attorney No. 4105870<br>Justin Cordello, NY Attorney No. 4131447 |
| 5 | DOLIN, THOMAS & SOLOMON LLP<br>693 East Avenue |
| 6 | Rochester, NY 14607<br>Telephone: (585) 272-0540 |
| 7 | Facsimile:  (585) 272-0574<br>nthomas@theemploymentattorneys.com |
| 8 | |
| 9 | Charles H. Saul, PA State Bar No.19938<br>Liberty J. Weyandt, PA State Bar No. 87654<br>Kyle T. McGee, PA State Bar No. 205661 |
| 10 | MARGOLIS EDELSTEIN<br>525 William Penn Place |
| 11 | Suite 3300<br>Pittsburgh, PA 15219 |
| 12 | Telephone: (412) 281-4256<br>Facsimile: (412) 642-2380 |
| 13 | csaul@margolisedelstein.com |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# AMENDED COLLECTIVE ACTION COMPLAINT

**AND NOW** come Plaintiffs Claude Bryant, Craig Fulcher, Sanford Levine, Thomas Thompson, et al., on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP, and Margolis Edelstein and file the following Amended Collective Action Complaint:

## I.    INTRODUCTION

1.   This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to Plaintiffs Claude Bryant, Craig Fulcher, Sanford Levine, Thomas Thompson, et al., individually, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

## II.   JURISDICTION AND VENUE

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, and under 29 U.S.C. §216 (b).

3.   Venue is appropriate in the Northern District of California since some of the unlawful acts alleged were committed in this district and because defendants conduct business in this District.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

4.   Intradistrict Assignment.  This is a nationwide collective action notification involving violations which occurred across the country, including some which occurred in the Northern District of California.

## III.  PARTIES

### A.    Plaintiffs

5.   The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their

1

AMENDED COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  regular or statutorily required rate of pay for all hours worked. Plaintiffs expressly include each individual identified in the caption, together with any similarly situated current or former employees who previously has or subsequently may file consent forms to opt-in to this collective action. Any individual who opts-in to this action has full party status pursuant to 29 U.S.C. § 216 (b).

6.  All of the defendants except for Alderwoods Group, Inc. are liable to all plaintiffs either directly as an employer or as successor-in-interest to plaintiffs' direct employer.

**B.   Defendants**

7.  Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202.

8.  Defendant Service Corporation International ("SCI") is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019.

9.  Defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative") is a Delaware corporation which is owned by SCI.

10. Defendant SCI Eastern Market Support Center, L.P. ("SCI Eastern") is a limited partnership which is owned by SCI.

11. Defendant SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western") is a limited partnership or corporation which is owned by SCI.

12. Defendant SCI Houston Market Support Center, L.P. ("SCI Houston") is a limited partnership which is owned by SCI.

13. Defendants Alderwoods, SCI, the SCI Cooperative, SCI Eastern, SCI Western and SCI Houston are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

14. The SCI Cooperative, SCI Western, SCI Eastern and SCI Houston are all entities which are owned, directly or indirectly, by SCI. Together with SCI, those entities are referred to collectively as the "SCI Defendants."

2

AMENDED COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

15. At all relevant times, Alderwoods was plaintiffs' employer and is thus liable to plaintiffs as an employer, joint employer, single employer and/or otherwise according to statutory and case law.

**Paul A. Houston and John Does 1-3 Are Liable to Plaintiffs**

16. Upon information and belief, Defendant Paul A. Houston acted as Chief Executive Officer and Director of Alderwoods from in or around 2002 until in or around 2006. The allegations in this section regarding Mr. Houston relate to his acts during the time he was employed by Alderwoods.

17. Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

18. Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

19. Upon information and belief, due in part to his role as Chief Executive Officer and Director, Mr. Houston is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the Community Work Policy, On Call Pay Policy, Licensing Compensation Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

20. Upon information and belief, due in part to his role as Chief Executive Officer and Director, Mr. Houston actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the Community Work Policy, On Call Pay Policy, Licensing Compensation Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

21.     Upon information and belief, due in part to his role as President and Chief Executive Officer, Mr. Houston actively ensures defendants' compliance or non-compliance with the FLSA.

22.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

23.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

24.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern standard pay scales.

25.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

26.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

27.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern training and education functions relating to Plaintiffs.

28.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

29.     Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern payroll and commission functions relating to Plaintiffs.

4

AMENDED COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

30. Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

31. Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern benefit plans relating to Plaintiffs.

32. Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

33. Because Mr. Houston has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and to control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Houston has the power to hire and fire employees.

34. Because Mr. Houston has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Houston supervises and controls employees' work schedules and/or conditions of employment.

35. Because Mr. Houston has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Houston determines the rate and method of employees' payment.

36. Because Mr. Houston has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Houston maintains employees' employment records.

37. Because Mr. Houston provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Plaintiffs.

38. Because Mr. Houston is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with the FLSA, he actively participates in the violations complained of in this action.

39. Based upon the foregoing, Mr. Houston is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to statutory and case law.

40. John Does 1, 2 and 3 are natural persons who assumed the above-described roles and responsibilities in relation to Plaintiffs' employment beginning in or about the time that Mr. Houston ceased to be employed by or associated with Alderwoods. Thus, for the same reasons set forth above regarding Mr. Houston, each of John Does 1-3 is liable to Plaintiffs because of his or her active role in operating the business, his or her status as an employer, or according to statutory and case law.

***The SCI Defendants Are Liable to Plaintiffs as Successors-in-Interest***

41. In or about November, 2006, SCI acquired Alderwoods and Alderwoods became SCI's wholly-owned subsidiary. After the merger, the SCI Defendants continued to operate the vast majority of both their own funeral homes and those of Alderwoods.

42. Upon information and belief, Coronado Acquisition Group ("Coronado"), at relevant times hereto, was a wholly owned subsidiary of SCI, which was formed by SCI for the sole purpose of merging with Alderwoods. At relevant times hereto, SCI and Coronado had the same offices, telephone numbers, and corporate officers

43. Upon information and belief, Alderwoods, through its shareholders, has adopted a merger agreement by and between Alderwoods, Coronado and/or one or more of the SCI Defendants.

44. Upon information and belief, SCI, through its shareholders, has adopted a merger agreement between Alderwoods, Coronado and/or one or more of the SCI Defendants.

45. Upon information and belief, as of approximately November 2006, Alderwoods and/or Coronado ("Merged Entities") became a wholly owned subsidiary of SCI.

46. Upon information and belief, the Merged Entities, under the merger agreement, continue business operations in substantially the same form as before the merger.

47. Upon information and belief, the Merged Entities, under the merger agreement, continue to use substantially the same workforce as before the merger, with substantially the same supervisors and same working conditions as Alderwoods.

48. Upon information and belief, the Merged Entities, under the merger agreement, provide essentially the same services as before the merger and use the same facilities, equipment and method of providing services as Alderwoods.

49. Upon information and belief, the SCI Defendants are successors-in-interest to Alderwoods' liability. As a successors-in-interest, the SCI Defendants are jointly and severally liable for all of the unlawful conduct of Alderwoods alleged herein.

IV. **FACTUAL BACKGROUND**

50. Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours

7
AMENDED COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

they worked over 40 in a week.

51. Defendants' policy and/or practice was to not compensate Plaintiffs for work they suffered or permitted Plaintiffs to perform.

52. Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

53. Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

54. The failure to pay overtime is willful.

55. Examples of defendants' policies and practices to deprive Plaintiffs of their earned wages and wage premiums are set forth below:

   a. **Subclass A:** Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in community work in furtherance of the employer's business under the "Community Work Policy."

   b. **Subclass B:** Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

   c. **Subclass C:** Defendants' implemented a "Licensing Compensation Policy," which required that certain hourly employees train for and obtain certain licenses. Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

   d. **Subclass D:** Defendants' "Training Compensation Policy" also required that certain hourly employees take other types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

   e. **Subclass E:** Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for

8
AMENDED COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f. **Subclass F:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for lunch breaks. Defendants did, however, suffer and permit their employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g. **Subclass G:** Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h. **Subclass H:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted plaintiffs to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i. **Subclass I:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

56. Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

57. More specifically, the records kept by defendants failed to adequately and accurately disclose, among other things, hours worked each work day, total hours worked each work week and/or total overtime compensation for each work week.

## CLAIM I

## FLSA

58. The preceding paragraphs are incorporated herein as if fully set forth herein.

59. Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs.

## CLAIM II

## FAILURE TO MAINTAIN PROPER RECORDS

60. The preceding paragraphs are incorporated herein as if fully set forth herein.

61. Defendants violated provisions of the FLSA by failing to make, keep, and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, total hours worked each work week, and/or total overtime compensation for each work week and defendants are liable to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a) an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b) an award of the value of Plaintiffs' unpaid wages;

(c) liquidated, compensatory, consequential and punitive damages;

(d) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e) an award of pre- and post-judgment interest; and

(f) such other and further legal or equitable relief as this Court deems to be just and appropriate.

///

///

///

# JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact.

Respectfully Submitted,
ROSEN, BIEN & GALVAN, LLP

Date: March 5, 2008

By: /s/ *Maria V. Morris*

Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Annette Gifford, NY Attorney No. 4105870
Justin Cordello, NY Attorney No. 4131447
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256

Attorneys for Plaintiff

11
AMENDED COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL