**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

DEBORAH PRISE, et al

                                        Plaintiffs

             vs.                        Civil Action No. 06-1641

ALDERWOODS GROUP, INC., et al

                                        Defendants

---

PROCEEDINGS

        Transcript of Hearing on Thursday, April 19, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Honorable Joy Flowers Conti, District Judge.

APPEARANCES:

For the Plaintiffs:        J. Nelson Thomas, Esq.
                           Charles H. Saul, Esq.
                           Patrick J. Solomon, Esq.
                           Liberty J. Weyandt, Esq.
                           Justin Cordello, Esq.
                           Michael Lingle, Esq.

For the Defendants:        Matthew W. Lampe, Esq.
                           Amy E. Dias, Esq.


                           Reported by:
                           Michael D. Powers
                           Official Court Reporter
                           Room 5335 USPO & Courthouse
                           Pittsburgh, Pennsylvania 15219
                           (412) 208-7572


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

1              P R O C E E D I N G S

2    (Court reconvened on Thursday, April 19, 2007, at 4:00 p.m.)

3              THE COURT:  This is a hearing on a motion for

4    expedited collective action notification and a motion to

5    strike in the civil action Prise versus Alderwoods Group

6    Inc., Civil Action No. 06-1641.

7              Will counsel please enter your appearance.

8              MR. THOMAS:  Yes, Your Honor.  Nelson Thomas on

9    behalf of the plaintiffs.

10              MR. SOLOMON:  Patrick Solomon on behalf of the

11    plaintiffs.

12              MR. SAUL:  Charles Saul on behalf of the

13    plaintiffs.

14              MS. WEYANDT:  Liberty Weyandt on behalf of the

15    plaintiffs.

16              THE COURT:  I am sorry?

17              MS. WEYANDT:  Liberty Weyandt on behalf of the

18    plaintiffs.

19              MR. CORDELLO:  Justin Cordello on behalf of

20    plaintiffs.

21              MR. LINGLE:  Michael Lingle on behalf of the

22    plaintiffs.

23              THE COURT:  Who is going to be speaking for the

24    plaintiffs?

25              MR. THOMAS:  Your Honor, I will be.  Nelson Thomas.

1           THE COURT:  Nelson Thomas.

2           MR. LAMPE:  Matthew Lampe on behalf of the

3    defendants.

4           MS. DIAS:  Amy Dias on behalf of the defendants.

5           THE COURT:  Who will be speaking on behalf of the

6    defendants?

7           MR. LAMPE:  I will, Your Honor.  Matthew Lampe.

8           THE COURT:  This is a hearing on a motion for an

9    expedited collective action notice to go out, and I have

10   already had sort of a preliminary hearing on this previously,

11   and that was held on January 31st, 2007, of this year.

12           And the standards that the Court went through there

13   in considering a motion for expedited class notification

14   pursuant to Section 216(b) of the Fair Labor Standards Act --

15   and I will call that throughout this hearing the FLSA -- the

16   potential plaintiffs must opt into a collective action suit

17   and affirmatively notify the Court of their intentions to

18   join the suit.

19           In order to facilitate that notice, the

20   representative plaintiffs must show that the potential

21   plaintiffs are similarly situated to the representative

22   plaintiffs and that the action should go forward as a

23   representative action.  To establish that the absent

24   collective action member is similarly situated, plaintiffs

25   must, one, be or have been employed in the same corporate

1   department, division and location; two, have advanced similar
2   claims; and, three, have sought substantially the same form
3   of relief.

4        And that is from Asencio versus Tyson Foods, Inc.,
5   130 F.Supp. 660, Eastern District of Pa., 2001, citing
6   Lockhart versus Westinghouse Credit Corp., 879 F.2d 43,
7   Third Circuit, 1989.

8        There is a two-tier approach that courts often use
9   with respect to determining whether plaintiffs are similarly
10  situated.  Mooney versus Aramco Service Company,
11  54 F.3d 1207, Fifth Circuit, 1995.  The first stage or the
12  first tier is what is called the notice phase.  And that
13  begins when the plaintiff seeks authorization to issue notice
14  to the other prospective class members which would permit
15  them to be notified that they could opt into the action.

16       This notice usually occurs at an early stage and
17  the Court will determine the viability of a possible class
18  based upon the claim and affidavits in support of that claim.

19       Morisky versus Public Service Electric and Gas
20  Company, 111 F.Supp.2d 493, District of New Jersey, 2000.  At
21  this first tier, there is a relatively low burden to show the
22  similarly situated requirement.

23       And from Asencio, 130 F.Supp.2d at 663, the Court
24  may conditionally certify the class for the purposes of
25  notice and discovery under a comparatively liberal standard,

1  that is, by showing that or by determining that the members

2  of the punitive class, quote, were together the victims of a

3  single decision, policy or plan, close quote.

4          Sperling versus Hoffmann-LaRoche, 118 F.R.D. 392,

5  District New Jersey affirmed 862 F.2d 439, Third Circuit,

6  1988.

7          And after the first tier, then the second tier will

8  occur where all the consents have come in and there will be

9  further discovery to determine whether or not the defendant

10  violated the FLSA and the matter is ready for trial.  And at

11  that second tier, the Court will reconsider the class

12  certification issue in light of the similarly situated

13  standard.  And will conduct a specific fact review with

14  respect to the class members who have opted in, and will look

15  at matters such as employment setting, defenses and other

16  procedural issues.

17          The Court finds that at the second tier, if they

18  are not similarly situated, then the conditional class is

19  de-certified.

20          At this stage, we are at what I would classify the

21  first tier.  It's a question of whether the notice should go

22  out.  And given that this is a collective action under

23  Section 216(b) of the FLSA, there is potential prejudice if

24  notice doesn't go out because as the clock goes on,

25  individuals will lose their rights because they may be barred

1    in whole or in part for some claims that they may

2    legitimately have if, down the road after discovery is

3    completed, or whatever discovery is relevant to what we would

4    normally do in a Rule 23 class action situation, having a

5    more robust hearing and a more lengthy time prior to the

6    determination of class certification, valuable rights could

7    be lost.

8         So, I think that's why the courts do take an

9    approach at this stage to be fairly liberal in approaching

10   the decision-making process.

11        My preliminary sense, having read the various

12   briefing, is that at least with respect to Alderwoods, the

13   questions of whether there is a common policy with respect to

14   the five classes, I think there would have to be some

15   refinement of the notice that would go out and a refinement

16   of the punitive classes that, at this preliminary stage

17   without really looking at the merits, just looking at some of

18   the filings that were made and the allegations, that there is

19   arguably enough to move forward on.

20        And the things that the Court would look to at this

21   stage would be the affidavits.  I know there is a motion to

22   strike that is there, but -- and some of it is set forth as

23   being hearsay.  But, some of the things that are hearsay --

24   and I will hear some argument on this -- I am not sure is

25   hearsay.  It may be admissions if a manager is making a

1    statement.  If it would fall within that party admission, it

2    is not hearsay.

3         I can tell you if a superior or representative of

4    the company tells me something and that is adverse to the

5    company, I can certainly put that in an affidavit because it

6    might be a party admission and, therefore, could come in.

7         So, you know, it may not be -- everything that was

8    arguably set forth as hearsay doesn't necessarily fall within

9    that.  And then there is an affidavit from someone who is or

10   was a manager and had a familiarity and said that they were

11   familiar with the corporate policies across the board, and

12   whether, on cross-examination, if they are deposed and it

13   comes out that they really lack a complete foundation for

14   that, I think that's a different story.  But, just to take

15   the affidavit at face valid may be enough at this stage to

16   move forward.

17        I am more troubled about the issues with respect to

18   Service Corporation International.  There is, in the

19   defendant's response, a statement that Service Corporation

20   International is, itself, just a holding company and that has

21   no employees.  That's typically the way -- or if they do have

22   employees, they are generally the very high-up officers of

23   the company, would not be the hourly employees of the nature

24   that would be the punitive class members in this case.

25        So, if that is the case, even though you have a

1  10K, a 10K is usually, you know, is usually done on a

2  consolidated basis where they are representing a multiple

3  tier of companies.  And I know, and I did look over the 10K

4  where it used the words, we have this and we have that.  But,

5  as a legal matter, maybe they don't have employees.  And I

6  have sufficient concerns about that, but I don't think I can

7  rely purely on a 10K in making that assessment.

8           So, my question would be if you have -- if you

9  operate as a holding company and you have fifty subsidiaries,

10  say, you have a subsidiary in each state, you have a separate

11  entity in each state, do you have to sue each separate

12  subsidiary and then you can bring them all together?  Or can

13  you just, in this context, sue the parent and make them

14  liable for the overtime or FLSA infractions that are at issue

15  here?  I don't know.

16           I don't have an answer to that and it wasn't

17  robustly briefed by the parties, but I am troubled by that.

18  So, I am not sure that I would be able to move forward and

19  certify a class of employees if the defendant is merely a

20  holding company and really wouldn't have those type of

21  employees.

22           So, what good have we done to send out the notice?

23  We will get a flurry of people coming back.  But, if you tell

24  the defendants to send it out to your employees, you know,

25  they will send it out maybe to the head officers who won't be

1   within that class.

2          So, those are sort of the issues that I see here

3   today.

4          So, I will let the defendants be heard first on the

5   Alderwoods situation because my preliminary assessment would

6   be in favor of the plaintiffs, albeit I think there is some

7   refinements that have to be made to the punitive classes, as

8   well as to the form of notice that they are proposing to

9   send.

10         MR. LAMPE:  Thank you, Your Honor.  Good afternoon.

11  I am not sure if this is on or if I am speaking loudly

12  enough.  May I address the SCI issue first?

13         THE COURT:  Yes.  I am sort of going in your favor

14  that way.

15         MR. LAMPE:  I understand.  I wasn't sure if

16  procedurally you wanted me to speak second to him on that.

17         THE COURT:  I sort of found for you.  I would like

18  to hear from the other side if I have it wrong unless you

19  know something I don't.

20         MR. LAMPE:  I would like to point out there was an

21  allegation made in the plaintiff's reply brief as to Service

22  Corporation International relying on, and you alluded to it,

23  relying on the annual report and the 10K.  And what I think

24  is important to point out to Your Honor is, I have the -- all

25  three of them here and would be happy to submit them, but in

1  the annual report, there is the annual report and then the

2  10K is right behind, it's a booklet.

3       And if you open the annual report and look at the

4  very first page, there is a reference to the Service

5  Corporation International and it goes on to speak about it,

6  and there is an asterisk after Service Corporation

7  International.  If you go down to the bottom of the page, you

8  will see the very point that you were making, and that is

9  that, as used here, SCI and the company refer to Service

10  Corporation International and companies owned directly or

11  indirectly by Service Corporation International.

12       So, there is simply nothing inconsistent with our

13  affidavit that we submitted indicating that this is a holding

14  company that has no employees.  It's not just a few.  It has

15  none.  And these annual reports -- because, as you said, this

16  is a consolidated report and the footnote very specifically

17  says that at the top --

18       THE COURT:  That would be -- my understanding would

19  be consistent with how public companies handle their 10K

20  reporting requirements.

21       MR. LAMPE:  So, as to SCI, it is a holding company.

22  It has no employees.  It would be pointless to issue notice

23  to its employees.  There are none.

24       And you are right that there was no briefing or

25  discussion of the other question that you raised about

1   whether or not --

2          THE COURT:  You could just sue the parent and bring

3   them all in?

4          MR. LAMPE:  Right.

5          THE COURT:  In a normal case, you wouldn't be able

6   to do that.  I don't know if there is some exception in these

7   circumstances.

8          MR. LAMPE:  Under the FLSA, there is a doctrine

9   called the single employer, also referred to as the joint

10   employer doctrine.  It is, as you would expect, the parent

11   can be held liable based on the fact of the -- based on the

12   six factor test, whether there is interlocutory boards,

13   whether the formalities are observed --

14          THE COURT:  We don't have any of that.

15          MR. LAMPE:  Right, Your Honor.  There has been no

16   evidence at all to suggest that the parent could be liable

17   for the acts of these various and myriad subsidiaries spread

18   around the country.

19          So, we would submit that your tentative views on

20   the issue of SCI are correct and that no notice to the order

21   should be issued at this time.

22          THE COURT:  At this time.

23          MR. LAMPE:  I am going to try convince you that

24   your preliminary views to Alderwoods is not right.  In a case

25   like this, as you said again, you previewed the law.  The

1    issue is, is there evidence of a common unlawful policy?

2            THE COURT:  Right.  And you have a number of

3    affidavits, some of which is hearsay.  So, the hearsay, I

4    will tell you I will disregard the hearsay or give it very

5    little weight.

6            It is very different at this stage where it is

7    not -- I am not making factual findings, so there are a

8    number of other cases, none that are precedential for this

9    Court, that have discussed the motion to strike in this

10   context.  That's Crawford versus Lexington-Fayette Urban

11   County Government, 2007 Westlaw 293865, Eastern District

12   Kentucky, January 26, 2007, showing the relaxed standard.

13           But, I think most Judges would say at this stage

14   when you are reviewing this type of information, if it is

15   true hearsay, you give it very little weight, if at all, and

16   I can disregard it and I can treat each of those affidavits

17   in an appropriate fashion.

18           There is some other aspect of the affidavits,

19   however, that I don't find would be hearsay and would have

20   some evidential value with respect to these matters and I

21   just commented on a few of those aspects.

22           MR. LAMPE:  In these cases, they set up, as you

23   said, is there evidence of a common unlawful policy?  And

24   there is a distinction in the cases between, on the one hand,

25   evidence of wage problems that could suggest a common,

1    unlawful corporate policy.

2         On the other hand, there is cases that deal with

3    allegations of wage problems that were very apparently

4    violations of company policy and certainly not the sum and

5    substance of company policy.

6         THE COURT:  I understand that there are.  I

7    understand from the record, and I will put this on there,

8    that there are corporate policies that Alderwoods have that

9    would be clearly in compliance with the law.  So, the formal

10   policies are in compliance with the law.

11        The question is whether, notwithstanding the

12   corporate policy, there was an unwritten policy to, in

13   effect, violate the written policies and to, say, disregard

14   that and do something different which the plaintiffs argue is

15   violative of the FLSA.

16        MR. LAMPE:  And that was exactly what I was going

17   to say, and let me move to the next step.

18        What we have then is, we have lawful policies that

19   state employees are to be paid for all of their hours.  We

20   have allegations from five affiants, there was a sixth

21   Alderwoods affiant included in the plaintiff's reply brief

22   that said your order said they weren't allowed.  There are

23   five Alderwoods affiants; three of them are from the

24   Pittsburgh area, two others are from other areas.  All five

25   are in one of twenty-five nonexempt positions represented and

1  these five individuals do, in fact, claim that they

2  experienced wage problems.

3        In the context of the evidence before the Court,

4  and there is the cases such as Harrison versus McDonald's and

5  Flores versus Lifeway and England versus New Century, they

6  say that the mere fact that there are some allegations is not

7  sufficient to justify conditional certification.

8        And the Flores case, for instance, dealt with a

9  situation where there were two allegations out of fifty

10 employees and the Court said that is not enough.

11       The England case, in that case, there were two

12 hundred affidavits, but it did not show any kind of a nexus

13 to any sort of corporate policy. And the Court said that is

14 not enough. These are local complaints. They are

15 insufficient to establish a company policy.

16       THE COURT: That is why I made reference to the one

17 fellow that was the manager. That was the one that was most

18 compelling. Let's talk about him.

19       MR. LAMPE: McDonald's -- Harrison versus

20 McDonald's, this is a case where there were comments

21 attributed to a manager who supposedly said that there was

22 improper wage violations going on in that unit and the Court

23 said -- the Court did not find that to be sufficient to

24 justify notice and denied the motion. And there is only one

25 manager here and this is a manager whose name is --

1      THE COURT:  Deborah Prise?

2      MR. LAMPE:  Prise is the plaintiff, right.

3      THE COURT:  Who was the manager?

4      MR. LAMPE:  There is a manager.

5      THE COURT:  In this case.

6      MR. LAMPE:  There is a manager named --

7      THE COURT:  She says as a manager, she was aware of

8  the defendant's company-wide policy, policies, and was

9  responsible for the enforcement of those policies at her

10  facility and the policies were issued from the defendant's

11  Cincinnati, Ohio headquarters and most were contained in the

12  defendant's policy and procedures binder.  Then goes on to

13  describe those.

14      So, I am not -- you know, so this, what is the one

15  that is speaking to company-wide policy?

16      MR. LAMPE:  Let me raise -- address the very point

17  that you mentioned.  She said that there are policies kept in

18  a binder.  She does not say that the policies that she is

19  about to describe were among those in the binder.

20      THE COURT:  Says most were contained.

21      MR. LAMPE:  And she goes on to describe policies.

22  She does not say they are in the binder.  There is a policy

23  that says you have to work in the community.  So, I think

24  that there is -- I think that is a little misleading.  There

25  are no written policies that reflect these five supposedly

1    unlawful policies and she -- saying she enforced those

2    policies at other her locations.

3         I would pose this question:  If there is a written

4    policy everyone needs to get paid for all of their hours of

5    work and there is some unwritten company policy that says you

6    violated the written policy, what foundation is there in the

7    record that this woman, who worked at one location in the

8    Pittsburgh area, would have knowledge of these practices that

9    occurred in other locations throughout the forty states where

10   this company operates?

11        It would be different if she had a written policy

12   that said you are supposed to work off --

13        THE COURT:  But, then you will never, ever have a

14   case based on an unwritten policy.  A lot of the things may

15   be fodder for depositions and cross-examination of the

16   witness.  But, this is a person who purports, because of the

17   position that she held, to be aware of company-wide policies.

18        MR. LAMPE:  Yeah.

19        THE COURT:  So, I don't know what more -- and then

20   goes on with some specificity to talk about those and some of

21   the indications that they have.

22        MR. LAMPE:  We would submit that in a case where

23   there is a written policy that's lawful where there is no

24   production of an unlawful written policy and where there is

25   no explanation in the record for how this individual, who

1    worked in one place, supposedly had knowledge of practices
2    across the country, and that is insufficient, and it is a
3    very isolated instance.
4            And this case does line up with the other ones in
5    which notice was denied because in the context of how many
6    employees and how many states there are operations, the
7    allegations are insufficient to justify notice at this point.
8            Let me move to another point.  You mentioned the
9    class definition.
10           THE COURT:  Before you go there, you would agree
11   with me then, wouldn't you, at least as to the locale in
12   which she was operating, whether it would be Pennsylvania or
13   the areas that she would be in, as well as some of the other
14   employees that are here, that you could have class issues
15   with respect to -- you could have at least a subclass that
16   may survive?
17           MR. LAMPE:  We would say that, at the very most,
18   notice would issue for two locations, Brandt and Hirsch.
19   Those are two facilities where she was involved.
20           THE COURT:  Before we move off of that, I would
21   like to hear from the plaintiffs with respect to this
22   particular affidavit and this particular manager because this
23   is the most compelling support for the class, the nationwide
24   notification.
25           MR. THOMAS:  To the podium it is better?

```
 1              THE COURT:  You don't have anything further on this
 2   issue, on this affidavit?
 3              MR. LAMPE:  I have more on Alderwoods, but not on
 4   this one.
 5              THE COURT:  On this one, right.  It is easier for
 6   me if I keep the issues together.
 7              MR. THOMAS:  Your Honor, I would note several
 8   things.
 9              First of all, the vast majority of cases, as this
10   Court has cited and held, go contrary to the very few
11   outliners on which defendants rely and, in fact, even the
12   cases on which they rely, they are patently distinguishable
13   from this case here.
14              But, let me leave that aside because I think the
15   standard has been set by the Court and we are in agreement
16   with that.
17              In terms of Alderwoods, it is not correct to say
18   that we have one manager's testimony.  We have Deborah Prise,
19   who is a manager.
20              THE COURT:  But, I think his issue -- and this is
21   what you need to focus on.  You need somebody that is going
22   to speak to company-wide things.
23              It would be one thing if you had a hundred
24   affidavits that would include several from each state or
25   locale that you would be involved with.  But, his argument
```

1    is, your affidavits are discretely tied to just certain

2    locations, and then the one that has the real company-wide

3    issues is Miss Prise.

4              MR. THOMAS:  Actually, that is not true.  There is

5    Miss Prise as a manager.  There is Bob Pramik, who is a

6    general market manager and a location manager.  We also have

7    Michael Lanza from Puyallup, Washington State, where I

8    heard -- where the regional manager and his manager admitted

9    the same policy existed.  We have --

10             THE COURT:  Those are the admissions that I was

11   talking about that arguably the Court could consider.

12             MR. THOMAS:  Jack Reddick from Independence,

13   Kansas, where his manager and the district manager made the

14   same admissions about company policies.

15             At this stage, where we are, without any discovery

16   and given the great bridges to the people out there, to say

17   that we have two managers directly stating that these are the

18   policies, followed up by affiants and managers in multiple

19   other locations, Kansas, Washington State, making the same

20   points, as well as all of those employees confirming that all

21   of the locations all across the country were experiencing the

22   same violations, that is well more than enough to meet the

23   lenient standards.

24             It is not the case that we need to go to each state

25   or each location and solicit an affidavit from each of them

1    saying that's what this is.  But, when the company managers

2    say repeatedly this is our policy and it is enforced

3    nationwide, that meets the lenient standard that is here.

4            THE COURT:  Okay.

5            MR. THOMAS:  Would you --

6            THE COURT:  That is fine.

7            MR. THOMAS:  Should I go on to any points I have or

8    step down?

9            THE COURT:  How about SCI?

10           MR. THOMAS:  SCI.  Two responses on SCI.

11           First of all, leaving aside their 10K and annual

12   report, perhaps more damaging are the additional exhibits we

13   have submitted from their own website which they refer to as

14   having employees.  You can apply for their jobs, on this

15   website to SCI jobs.  They say that we have one of the most

16   diverse and dedicated workforces in the county.  It says our

17   people, employees of SCI continually strive to exceed

18   expectations.

19           THE COURT:  That is all sort of that colloquial way

20   that holding companies often hold themselves out because they

21   all talk about we, us, our, and it would not be uncommon for

22   them to have a website that would be reflecting the same

23   kinds of things that you saw in the 10K.

24           But, as a matter of law, when we have to ask, who

25   is the employee who is going to be responsible for any FLSA

1    violations, that's what I need to look at.  And at this
2    stage, I have some sufficient concerns that SCI may not be
3    the right defendant unless, you know, when you go through the
4    other tests that were articulated to see if they are a single
5    employer, you can impose that burden on them.

6         But, there is no evidentiary support for that here.
7         MR. THOMAS:  Two things.

8         First of all, the standard under the Supreme Court
9    is that the FLSA -- and this is in our papers -- that a
10   broader or more comprehensive coverage of employees would be
11   difficult to frame, and that anybody who has suffered or
12   permitted to work, whose work benefits a company or
13   individual, is considered that person's employer.

14        I will be glad to brief this in more depth on the
15   joint employer issue, but it is a standard that is even more
16   liberal than the Title VII standard for consideration of who
17   the employer is, and Courts routinely say that you are.

18        THE COURT:  The holding company is routinely held
19   liable just because they are the holding company?

20        MR. THOMAS:  Correct.  Because they suffer for or
21   permit the people to work.

22        MR. LAMPE:  We completely disagree with that.  As I
23   mentioned, there is a test that deals with this very
24   situation.

25        THE COURT:  It's sort of like piercing the

1   corporate veil.  That's what I was hearing.  I don't have it
2   in front of me, but it just struck me when I was reading
3   through this, because it really wasn't briefed in any fashion
4   when the issue was raised.

5        And the response was, well, look at the 10K.  To my
6   mind, knowing something, not an extensive amount about 10K's,
7   it's just they are consolidated documents and you can't, I
8   don't think, point to someone being an employer just because
9   there is a 10K, and I think that would be the same thing for
10  a website.

11       Now, it may be evidence when you get into this
12  other issues as to how they are holding themselves out, but
13  how do they hold themselves out to these employees?  How were
14  their checks written?  Who did they understand the employer
15  to have been?  Where are the personnel directors and the bank
16  accounts?

17       These are the types of issues, and if you have some
18  evidence that would indicate that, maybe it would be enough
19  to get the initial notification going out.

20       But, on the record before the Court today, I don't
21  have that evidential base, even though it's a somewhat
22  liberal standard as I indicated, that I would be comfortable
23  in staying that I am going to send out a notice to SCI's --
24  anyone who may have been on call during that period of time.

25            MR. THOMAS:  Your Honor, if I understand what you

1  have said, I think, you will see the good news is -- at least

2  the good news for us and maybe the good news for the Court in

3  dealing with this -- it is not a piercing-the-veil standard.

4  It is a very low standard.

5      THE COURT:  I don't have that in front of me and I

6  am not prepared to rule on it and -- if a 10K is enough to

7  get you there, I would be probably surprised if that were the

8  case, but I would have to withhold judgment on that.

9      MR. THOMAS:  With Your Honor's permission, could we

10  submit supplemental briefing or a motion to reconsider on an

11  expedited fashion on the joint employer position?

12      THE COURT:  What I would do is, I would deny the

13  motion with respect to SCI, but it would be without prejudice

14  for you to file a subsequent motion if you feel that you have

15  the support to do it.

16      So, it is not going to be a reconsideration.  It

17  just would be a new motion and it would take on -- it would

18  have its own life.

19      MR. THOMAS:  Thank you, Your Honor.

20      THE COURT:  Okay.

21      MR. LAMPE:  So, back to Alderwoods then.

22      The sum and substance of the record before the

23  Court is that there are two managers.  Mr. Thomas mentioned

24  them.  There is Pramik and Prise; prise at two locations in

25  the Pittsburgh area; Pramik at two locations; one in

1    Harrisburg; the other one in Camp Hill.  And that is it in
2    terms of managerial evidence in this case.

3            THE COURT:  See, a manager -- and at this lenient
4    standard, you know, if the manager at that level has certain
5    knowledge of and exposure to the corporate policies on a
6    nationwide basis, that may be enough at this stage.

7            MR. LAMPE:  I would just say the "if" that you just
8    said is not presented in the form of evidence before the
9    Court.  There is no evidence that these two local managers
10   had knowledge of what was going on --

11           THE COURT:  They said they have personal knowledge
12   because of their position.

13           MR. LAMPE:  That takes us all the way back to the
14   hearing on January 31st where you said conclusory allegations
15   wouldn't be enough.

16           And I think all this needs to be looked at in the
17   context of a company whose formal pay policies are completely
18   lawful and necessary individuals.  They are speaking of some
19   unwritten policy that is supposedly in effect throughout the
20   entire country.

21           How do they know that when they have only been
22   responsible for applying these practices in their own locale?
23   Our view is, there isn't sufficient evidence beyond the four
24   locations.

25               And let me move to another point, and that is the

1    class definition issue that you raised.  We think it's an
2    important issue.

3         When the brief was filed, the request was that
4    notice issued to these five subclasses, and we pointed out
5    that it is impossible to know which employees are within
6    these subclasses because they are built on the allegations in
7    the case.

8         And there is good authority from this Court in
9    Mueller versus CBS that indicates that a class cannot be
10   certified where you have to do a little mini-adjudication on
11   the merits to find out who is the class member.

12        There is a very practical problem here.  If you
13   order us to issue a notice, we need to know which employees
14   to issue the notice to.  And the way the class definition
15   reads is, for instance, class number one, the people in the
16   class are those people who have been required to work in the
17   community but have not been paid for that.

18        In our view, there is no one that meets that
19   definition.  That's what's in dispute in the case.

20        THE COURT:  I think the response there would be --
21   and this is a problem.  I said there had to be some
22   refinement.

23        My understanding is that the people that had
24   required that were the funeral directors around the country
25   who were hourly employers and the theory would be that it is

1  all of those people who worked during that period of time are
2  punitive class members.
3       MR. LAMPE:  Well, I think that would have been a
4  more reasonable position for the plaintiff to take, and I can
5  I can see that the Court might reach that view, but that is
6  not what the plaintiffs argued in their papers.
7       We raised this issue of the --
8       THE COURT:  I think someone who is an hourly
9  employee at one of these funeral homes who is doing
10 janitorial work is not going to be required to do community
11 service work.  So, I think that is the type of refinement
12 that is necessary here, although I can read enough of the
13 papers that have been prepared to discern what they are
14 really looking at.
15      MR. LAMPE:  Well, their explicit response, when we
16 pointed out the class definition problem was, if that
17 definition is wrong, we actually mean all nonexempt
18 employees.
19      THE COURT:  I don't think that is the case either.
20      MR. LAMPE:  No, Your Honor.  In fact, we would
21 encourage the Court to look at our exhibits and, in
22 particular, we have an Exhibit F, and this exhibit lists all
23 of the different nonexempt positions within Alderwoods.
24 There is twenty-five of them and there is many of these
25 positions that you have assumed.  There is grave digger,

1    grounds keeper, maintenance --

2            THE COURT:  Those people are not going to fall

3    within this, and I am not sure they are on call, those

4    people.  Maybe they are.  I don't know.

5            Let me hear from the plaintiff's side.

6            MR. LAMPE:  One other point.

7            THE COURT:  Yes.

8            MR. LAMPE:  In the chart that is Exhibit F, what we

9    have done is, we have taken the position descriptions for

10   these twenty-five positions and we put a check next to any

11   position that lines up with any of these policies that are

12   supposedly at issue in the case.

13           THE COURT:  Just for future reference, any time

14   there are going to be any lengthy documents like this filed,

15   if you could supply the Court with a courtesy copy that's

16   tabbed and marked, I would really appreciate it.

17           MR. LAMPE:  We will certainly do that, Your Honor.

18   I apologize.

19           THE COURT:  It is tough to find it here because I

20   don't have it tabbed.

21           MR. LAMPE:  The last piece of paper in our brief is

22   the summary of those position descriptions, none of the

23   nonexempt employees whose job description --

24           THE COURT:  Okay.

25           MR. LAMPE:  You are exactly right.  Look at the

1    on-call responsibility of the twenty-five positions.  There
2    are only three that have that.  There are only three that are
3    involved in selling insurance, only three that are
4    commissioned, and there are six that are involved --

5         THE COURT:  And the notice would not go out to
6    everybody, because somebody is going to get a notice, you
7    hope, gee, I am going to get a big benefit here.  If I opt
8    in, I am going to get money, but they are not going to ever
9    be in at one of those classes.

10        MR. LAMPE:  Our position is that there should be no
11   notice --

12        THE COURT:  It has to be tailored to those that are
13   affected and there is going to have to be some way to
14   identify which class they are in.

15        MR. LAMPE:  The only evidence before the Court as
16   to all of these positions, with the exception of funeral
17   director, is the evidence that we put forward.  There are no
18   affiants who are not funeral directors or assistant funeral
19   directors, and that simply is not spoken to in the record.

20        THE COURT:  They may be the bulk of the class
21   because those are the ones that are in all categories.

22        MR. LAMPE:  The funeral directors is, but a
23   fraction of the potential all nonexempt employee group, you
24   are absolutely right about that.

25        THE COURT:  It is not going to be all nonexempt

1    employees, it can't be, because I don't think the facts would
2    support that.
3           MR. LAMPE:  So, we think it should be four
4    locations and limited to funeral directors or funeral
5    director types as indicated on our chart here that could
6    possibly have been involved in these policies.
7           But, again, we think that, in light of the fact
8    that we have written lawful policies and we are talking about
9    such a very few, five affidavits out of over thousands and
10   thousands of employees, it's just insufficient under the
11   standards to justify any notice.  Thank you.
12          MR. THOMAS:  Your Honor, I think there is probably
13   less disagreement about this point than most of the other
14   issues in the case.
15          We don't have any desire to send notice out to
16   people who I think there were two competing -- we don't have
17   any desire to send out notice to people who do not fall
18   within --
19          THE COURT:  Who have the responsibilities which
20   would have generated these FLSA issues?
21          MR. THOMAS:  Correct.  It is not in our good or the
22   Court's.
23          The other practical problem though, in having dealt
24   with these cases many, many, many of these cases is, the
25   clock is ticking right now.  And the problem is, if we spend

1    years, months, weeks sorting out who could potentially be in
2    the class and who could not, the time could run out on these
3    people.
4        THE COURT:  But, you can't send it out to
5    everybody.  There got to be a practical solution here where
6    you get a list and see who had these positions during this
7    period of time and that's who the notice goes to.
8        MR. THOMAS:  The problem is, I am not sure that
9    the -- this is the bigger concern.  And the other concern is,
10   if you don't send it out to everyone who is supposed to get
11   notice, you have people hanging out there whose claims are
12   lost because of a mistake.
13       THE COURT:  There is not much we can do unless you
14   want to give a notice in a national newspaper, or something
15   like that.  But, I don't think that that is cost justified in
16   this type of case.
17       What do you want to have happen here?
18       MR. THOMAS:  What I would like to have happen is
19   notice to go to anybody who could potentially have a claim.
20       THE COURT:  If you are the defendant -- that is too
21   broad.  I mean, that's putting a terrible burden on them.
22   You have to have some -- I am sympathetic to the individuals
23   who are losing rights.
24       But, on the other hand, you can't tell a defendant,
25   at your own peril, you better notify everybody in the world

1    that they may have it.  You have people on your side who are

2    knowledgeable about the structuring of these entities and who

3    did what and how they did it.  And if this exhibit is

4    correct, these are the people that would get it.  And if one

5    or two are lost, you have a lot of word of mouth among these

6    people, I am sure, all around the country, or you put out

7    some notification in a journal, or something, that would

8    attract their attention, some other way to deal with that

9    concern that you have.

10           MR. THOMAS:  I think what I would suggest is this:

11    Here's another concern I have --

12           THE COURT:  I am not going to have you put a burden

13    on the defendant that is too broad-based and makes them

14    having to flail around and spend a lot of time and money when

15    it has to be more focused.

16           MR. THOMAS:  What I would propose is this:

17           First of all, I am concerned about relying on job

18    titles alone because often in these locations, you have

19    issues where the person may be listed as an embalmer.  That's

20    what their official job title is.  That's what they are coded

21    as.  But, they are, in fact, doing funeral director

22    responsibilities and always have been and sort of known for

23    doing that, but just for the sake of internal company

24    documents, they are referred to differently.

25           I think that if we did two things, one is liberally

1   see anybody who could be within the group and, number two,

2   make sure that the notices are posted at the funeral homes to

3   say, listen, notices have gone out to people who appear to be

4   within this group.  However, if you didn't receive a notice

5   but you were doing these type of things, we are informing you

6   that you may have a claim and you need to do something about

7   it, and put that posting up for ninety days.

8           THE COURT:  I just have to take a break because I

9   have a criminal matter -- I have to just go off the bench for

10  a moment.

11          Talk about, when I am out of here, if there is a

12  way to refine how you can identify these individuals.

13  (Court recessed at 4:40 p.m.)

14  (Court reconvened at 4:45 p.m.)

15          THE COURT:  Okay.  Please be seated.  Okay.

16          MR. THOMAS:  Your Honor, I had a chance to confer

17  briefly with my side on this, but I haven't had a chance to

18  talk the other side, but I think we may have -- let me put a

19  proposal here that may make some sense.

20          What we would be prepared to do is to talk -- speak

21  to Mr. Lampe over the next, I would say -- first, while the

22  toll is in effect, so people aren't losing their rights, we

23  have a toll in effect.

24          THE COURT:  I thought the total was over --

25          MR. THOMAS:  It started again if we are cutting

```
 1   people's time off --
 2          THE COURT:  I think the defendants said no to that
 3   in the past and I think they would say no again.
 4          My preliminary assessment -- and it is going to be
 5   my final assessment -- is that a collective action notice
 6   would be appropriate to go out, but I have to have an
 7   appropriate class and the notice has to be appropriate.
 8          I have trouble with the breadth of the parties, we
 9   just talked about that, I have trouble with, how do we say
10   who is in which class, you know, the five subclasses.  The
11   notice that was attached to your form doesn't deal with any
12   of that.  It seems to talk broadly in terms of the hourly
13   employees, and all of that.
14          So, I will permit the class notification to go out,
15   but I need you to re-submit a form of notice and a
16   redefinition of the classes that is more narrowly drawn, and
17   some of the -- I just want to get to --
18          You have, like, number one for Alderwoods current
19   and former hourly employees of defendants.
20          Well, that's not going to be the case.  It is going
21   to be some discrete subset of those hourly -- it is not all
22   hourly employees.  So, it is how do you define those hourly
23   employees who would be in the community work policy?  And
24   there appear to be five categories.  So, you are going to
25   have to refine that.
```

1      Then you go on to say who were suffered or

2    permitted.  I think it has to be who were required because I

3    don't think it is a violation if somebody just permitted you

4    to do community work service.  I think that would be --

5          MR. THOMAS:  Tied more to the regulation.

6          THE COURT:  Right.  So, it has to be -- because

7    there is no violation if they weren't required as part of

8    their job to --

9          MR. THOMAS:  I think the regulation is encouraged.

10          THE COURT:  Okay.

11          MR. THOMAS:  We can tailor that to the regulation.

12          THE COURT:  Whatever it is.  I mean, it is

13    something where it is -- as a condition of their employment,

14    there was something that they were expected to do if they

15    were going to keep their job.  That's the way I understand

16    it, you get paid for that, if there is a violation, and the

17    same thing as with two.  And then they -- the training

18    policy, that's the same issue, and the people that would be

19    in that, and four and five.  So, those are -- all have the

20    same similar kinds of issues.

21          And then when you look at the form of the notice, I

22    didn't have attached to it the form of consent that they

23    would be -- at least my copy didn't have a consent form so we

24    could see what they would be sending back.  And the question

25    is, who sends out the notice?  You know, does that -- do you

1  give the notice to the defendant?

2      MR. THOMAS:  We would bear the burden of the cost

3  for that, unless they want to pay for it.

4      THE COURT:  But, you need to coordinate how you are

5  going to get the list, the mailing list, you just give that

6  to them and they certify that they sent it, however you want

7  to do it, but I need that process done, so I need a

8  restatement of the classes that comport with what I discussed

9  here today.

10      We need the revised notice, you know, that it would

11  be appropriate.  And the notice, how it is going to go.  Is

12  it going to go by mail to these individuals?  How do you get

13  the list?  Do you turn it over to the defendants?

14      You need to coordinate with the defendant so I have

15  a way of understanding that.  And then I need to see the form

16  of the consent that they are signing, that they will be

17  expected to sign as well.

18      So, the sooner you get that in, the sooner the

19  order will be able to go out, because my order won't become

20  final until I have the refined classes and the appropriate

21  form of notice that I feel is appropriate.

22      MR. THOMAS:  Your Honor, we sincerely appreciate

23  all of your efforts to issue quick decisions when I know

24  there is a lot on your docket.

25      One request, which is typically done in these

1  cases, and I request that we do it here, that is within
2  fourteen days, the sides either submit to you an agreed --
3  mutually agreed notice and form.  If that's not done --
4          THE COURT:  It would be without prejudice to the
5  other side's right to preserve -- but, I mean, they are going
6  to be objecting to what I have done here today, I am
7  assuming.
8          MR. LAMPE:  In part.
9          THE COURT:  So, if you can agree that whatever that
10 is produced is consistent with my order, it does not mean
11 that you are agreeing that I made the right decision, but if
12 you can mutually agree that this comports with what I have
13 ordered today, that would be helpful and we can move on.
14         MR. THOMAS:  If there are issues that we can't
15 agree on, both sides --
16         THE COURT:  Then you have to come back here
17 promptly.
18         MR. THOMAS:  We'd submit our notice, their proposed
19 notice so you can see the difference.
20         MR. LAMPE:  That makes sense to us.  If there is a
21 disagreement, it may go to the content or manner of
22 distribution.  We will try to work that out, both sides.
23         THE COURT:  And I am going to impose on both sides
24 an obligation to work diligently because I am finding that it
25 is the collective notice -- I will say there will be a

1   determination at the first tier that the class will be
2   conditionally certified along the lines that I described.
3   They have to be narrowly limited to those employees who would
4   fit within the work issues that were raised, and the workers
5   have to be, the classes have to be refined to reflect that
6   and to be more consistent with the regulations, and then we
7   need to work out how the notifications will go out and the
8   form of the notice has to be changed to reflect what we have
9   talked about.

10         MR. THOMAS:  Your Honor, one last issue on the
11  joint employer SCI issue.  We may be able to submit that
12  briefing to you without any additional discovery, but we
13  would request an order today that if we need limited
14  discovery on that issue, that that be expedited and begin
15  immediately and be turned around in less than fifteen days.

16         THE COURT:  It depends on what kind of volume of
17  material you are asking for.

18         MR. THOMAS:  I don't think much.  But, we have had
19  disagreements with defense counsel about whether discovery
20  can proceed.  But, we would request that the Court's
21  direction be that it be done immediately and in an expedited
22  basis.  We will try to work cooperatively with them, but we
23  would like there to be an understanding that discovery on
24  that issue is to be going forward as quickly as possible
25  since it is so important.

1        MR. LAMPE:  Your Honor recalls from the hearing in
2   January that Mr. Thomas indicated he did not need any
3   discovery and he was confident he could settle with what he
4   had --

5        THE COURT:  At least I am concerned today that at
6   SCI, that that's not the case.

7        MR. LAMPE:  If he wants to go take discovery,
8   obviously as you said in the hearing, it has to be a two-way
9   street and there can't be any parameters on how many days
10  because they don't know what we want and I don't know what
11  they want.  We need to discuss it before there is any sort of
12  restriction.

13       THE COURT:  You meet and confer on a discovery
14  plan, okay?  And find out what you are going to need, what
15  you are going to be asking for.  You should have a meet and
16  confer sometime next week as to what the parameters are.  It
17  is a two-way street when you are going down there.  That way,
18  if you feel you need some limited discovery with respect to
19  this issue that is contemplated, that can happen.

20       So, you need to do that.  And if you want to get
21  together again, if you can agree on it, you can just start.
22  If you have to know something, say what you want and how long
23  you need to take it, and the other side can respond.  We will
24  let you file something like that, but you have to notify the
25  other side that you are asking for an expedited hearing.  The

1  response turn-around should be two business days, and I will
2  try to have a hearing within a week on that.

3          So, that the sooner you get working and seeing what
4  you need to do, you know, you will be protecting the interest
5  of the parties that you are seeking to represent as class
6  members here. But, so it is up to you really to do that.
7  So, just work together, to the extent that you can, if they
8  want discovery.

9          On the other hand, to be responding to it, you are
10 going to have to make that available as well.

11          MR. THOMAS:  Certainly, Your Honor.

12          MR. LAMPE:  We just would reserve the right to
13 object to having to turn anything around in two days.  If
14 there is a brief we have to file within two days of getting
15 their brief, it may not be possible.  We may be asking for
16 additional time to do that.

17          THE COURT:  It is going to depend.  But, I think
18 that should be the goal.  If they can get something out two
19 days from now and you can respond in two days, I think if it
20 is somewhat short, that is fine.  We can have a more full
21 dialogue and a telephone conference if necessary.

22          MR. THOMAS:  Your Honor, those issues --

23          THE COURT:  That is the goal, is what I am saying.
24 I am not ordering that that is the case.  That would be the
25 goal.  Because if they are going to ask for an expedited

1  hearing, you have to ask for it.

2          MR. LAMPE:  Right.

3          THE COURT:  If you feel you can't do it, you

4  respond that way.

5          THE COURT:  Okay?  So, we need to set a time for

6  the argument on the motion to dismiss.  There just wasn't

7  enough time to get all of this in today.

8          How about June 8th at two o'clock?

9          MR. THOMAS:  That's fine with us, Your Honor.

10          MR. LAMPE:  That is fine with us, Your Honor.

11          THE COURT:  That's a Friday at two o'clock.  Okay?

12  And so I will look for you, and it is so ordered on the

13  record today that the findings that I made with respect to

14  the evidentiary materials that support the plaintiffs'

15  motion, as well as the lack thereof with respect to

16  Alderwoods, and the lack thereof with respect to SCI, the

17  Court will conditionally certify the class as reflected on

18  the record today, and it's subject though to the plaintiffs'

19  filing with the Court the revised class description, a

20  revised notice that comports with what the Court has said

21  today, as well as a plan for notice which would include how

22  the notice is going to go out, and I will need to see the

23  consent form that's an exhibit to the file.

24          Anything else I overlooked?

25          MR. LAMPE:  Your Honor, I wanted to ask one

1    question.

2         Have you reached a conclusion yet about the

3    geographic scope?

4         THE COURT:  The geographic scope, I am going to say

5    is national.  I think the -- I am sufficiently -- at this

6    stage of the proceedings, applying the liberal standard

7    looking at the managers who are professing to have personal

8    knowledge in their positions of the corporate policies, the

9    Court finds at this stage that that is sufficient.

10        MR. THOMAS:  Thank you, Your Honor.

11        THE COURT:  Okay?  It is all subject to

12   reconsideration at the second stage.

13        MR. LAMPE:  Yes, Your Honor.  Thank you.

14   (Court adjourned on Thursday, April 19, 2007, at 4:30 p.m.)

15

16                        *  *  *  *  *

17        I certify that the forgoing is a correct transcript

18   from the record of proceedings in the above-entitled matter.

19

20                                S/Michael D. Powers
                                 Michael D. Powers
21                               Official Reporter

22        *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

23

24

25

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al.,

       Plaintiffs,

    vs.

ALDERWOODS GROUP, INC., et al.,

       Defendants.

Civil Action

No. 06-1641

_____

Transcript of proceedings on September 6, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge

APPEARANCES:

For the Plaintiffs:         J. Nelson Thomas, Esq.
                           Patrick J. Solomon, Esq.
                           Charles H. Saul, Esq.
                           Liberty J. Weyandt, Esq.
                           Justin M. Cordello, Esq.

For the Defendants:         Matthew W. Lampe, Esq.
                           Amy E. Dias, Esq.

Court Reporter:            Richard T. Ford, RMR, CRR
                           619 U.S. Courthouse
                           Pittsburgh, PA  15219
                           (412) 261-0802

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1   (Proceedings held in open court; September 6, 2007).

2        THE COURT:  This is a hearing in Prise versus

3   Alderwoods Group, Inc., Civil Action No. 06-1641.  The hearing

4   concerns a question as to whether or not notice should be sent

5   to employees of Service Corporation International.

6        Will counsel please enter your appearance.

7        MR. THOMAS:  Yes, Your Honor, Nelson Thomas, Dolin,

8   Thomas & Solomon.

9        MR. LAMPE:  Matt Lampe, Your Honor, Jones Day, on

10  behalf of the Defendants.

11       THE COURT:  I notice a number of other people are

12  present here.  Are the two that have just entered your

13  appearance the ones who will make the argument?

14       MR. THOMAS:  Yes, Your Honor.

15       THE COURT:  Would the others just like to be on the

16  record so we know who is present.

17       MR. SOLOMON:  Patrick Solomon for the Plaintiffs.

18       MR. SAUL:  Charles Saul of the firm Margolis

19  Edelstein for the Plaintiffs.

20       MR. CORDELLO:  Justin Cordello.

21       MS. WEYANDT:  Liberty Weyandt from the firm

22  Margolis Edelstein.

23       MS. DIAS:  Amy Dias for the Defendant.

24       THE COURT:  Thank you.  The briefing of the parties

25  is, quite frankly, like two ships passing in the night because

1   the views of the law are just dramatically different from each
2   side.  So I just want to take a moment and reset the framework
3   for this.

4           The Plaintiffs are requesting that a collective
5   action notification be sent as a result of alleged violations
6   of the Fair Labor Standards Act, the FLSA.  The subclass
7   proposed as to the Defendant that is at issue here -- because
8   one notification has already gone out with respect to the
9   Alderwoods Group, Inc., I might be mistaken on that, there are
10  some other issues coming up on that.  The question concerns
11  the ultimate parent of the organization, which is Service
12  Corporation International.

13          The class would be current and former hourly
14  employees of Defendants who were suffered or permitted to
15  perform work by handling calls and other work related issues
16  after hours, but not compensated by Defendant for such work
17  performed after the workday off-site from the funeral home --
18  the on-call pay policy.

19          The Plaintiffs are asserting that the Defendant --
20  we will call the Defendant SCI for ease of reference -- is
21  their employer under the FLSA.  The Defendant says no, it is a
22  mere holding company and has no employees.

23          The problem I had was that the Plaintiff in the
24  briefing set forth a lot of factors which, if they were true,
25  would implicate an employment/employer relationship, which is

1   a very broad concept for purposes of the Fair Labor Standards
2   Act.

3           But Defendant has set forth affidavits, which have
4   not been contradicted to this Court's knowledge, showing that
5   those allegations are simply not true.

6           Just to give a preview, the definition of employer
7   under the FLSA, as set forth in 29 United States Code,
8   Section 203(d), provides that an employer includes any person
9   acting directly or indirectly in the interest of an employer
10  in relation to an employee.

11          The courts have to look at an economic reality test
12  and a totality of the circumstances test that the courts look
13  at, and the courts have noted that there's a broad definition,
14  it's broader than what would normally be the case in a
15  traditional common-law sense.  Those cases are Rutherford Food
16  Corp. versus McComb, 331 US 722, 1947; Zavala versus Wal-Mart
17  Stores, Inc., 393 Fed Supp. 2d 295, District of New Jersey,
18  2005.  There are a number of others that stand for that same
19  proposition.

20          The cases -- and I have read all of the seminal
21  Supreme Court cases that were decided, as well as the other
22  cases cited by the Plaintiffs in this situation, and also the
23  regulation which is set forth in 29 Code of Federal
24  Regulations, Section 791, and I think it's (b) -- I have to
25  get my copy of that.  The one that has the applicability in

1   this case is (b)(3), but I did want to quote for purposes of

2   the record the exact language of (b)(3), which I had printed.

3   Can you reprint that for me?

4            THE LAW CLERK:  I will.

5            THE COURT:  Thank you.

6            I also read the cases that were cited in the

7   WESTLAW version of the Code of Fed Regulations that are cited

8   under that section.  Quite frankly, the cases that are

9   implicated here mainly deal with individuals who are

10  shareholders or officers of a corporation.  As the

11  shareholder, they may have been the majority shareholder or

12  controlling shareholder.  The courts have found those

13  individuals in certain circumstances to be employers.

14           But there was generally some affirmative conduct

15  that was involved, direct involvement in the operations of the

16  business such that the courts could find some relationship,

17  more than just being a shareholder.  That there was direction

18  and control actually being exercised.

19           When I looked at the cases that the Plaintiff has

20  cited, the cases of the Plaintiff generally dealt with

21  situations where there was some affirmative action being taken

22  by the person sought to be held as the employer.

23           For example, in the Alba versus Loncar case, which

24  was 2004 WESTLAW 1144052, Northern District of Texas,

25  May 20, 2004, the Court there was considering whether an

1   individual's control over the employees of a corporation were
2   sufficient to warrant a finding of an employer/employee
3   status.

4           The Court there found that there were certain
5   managerial responsibilities and substantial control over the
6   terms and conditions of the employment.  So they were looking
7   for operational control in some sense.  I don't think it had
8   to be complete, but it had to be substantial.

9           Indeed the seminal decision of the Supreme Court,
10  and they all seem to be fairly old cases going back into the
11  1940s and the most recent being the 1973 decision of the
12  Supreme Court in Falk versus Brennan, 414 US 190.  In that
13  case there was a partnership that was providing management
14  services for a number of real estate apartment complexes, and
15  the Supreme Court there found that even though the individuals
16  may have been paid by the separate -- at issue may have been
17  paid by the separate apartment complexes, the partnership
18  could actually be an employer as well, and what they looked
19  for was -- this is on Page 431 -- they looked at the extent of
20  the managerial responsibility at each of the buildings, which
21  gave that partnership substantial control of the terms and
22  conditions of the work of the employees.  So they were looking
23  really to the actions.

24          When you look at the regulation that's been raised
25  here, there were two things that I wanted to bring to bear

1   here.   The first is that the Plaintiffs cite Section 791.2(a)
2   for the proposition that there has to be some kind of a
3   showing that they are completely disassociated.  But if you
4   read that phrase in context, what the entire sentence says is:
5   If all the relevant facts establish that two or more employers
6   are acting entirely independently of each other and are
7   completely disassociated with respect to the employment of a
8   particular employee who during the same work week performs
9   work for more than one employer, each employer may disregard
10  all work performed by the employee for the other employer.

11          So in (a) they are not dealing with a
12  parent/subsidiary relationship we have here; they were talking
13  about someone who works part-time for one entity in a week and
14  part-time for someone else in a week.

15          The question is when can you lump those two
16  employers together, and the Court in that circumstance -- I
17  mean the regulation in that circumstance was looking for some
18  kind of complete disassociation because of the nature of how
19  the work was being performed during the same week.  So I think
20  you can't take that completely disassociated just out of
21  context in terms of what was the concern being addressed in
22  Section 791.2(a).

23          Then when you get to (b), because I think this is
24  the one that is more directly relevant here, because what
25  they're concerned with in (b) is a benefit.  It is where the

1   employee performs work which simultaneously benefits two or
2   more employers or works for two or more employers at different
3   times during the work week, a joint employment generally --
4   relationship generally will be considered to exist in
5   situations such as.

6        So at best what you have here is, arguably,
7   performing work which will simultaneously benefit two entities
8   because you could argue going up the chain that whoever is
9   working at the lowest tier subsidiary, there could be some
10  indirect benefit flowing up to the parent level.

11       Then when you get to subpart (1), it has to deal
12  with if there is an agreement to share, and I don't think
13  there is any issue here that there is any sharing of the
14  employee.

15       The second aspect of that regulation is where one
16  employer is acting directly or indirectly in the interest of
17  the other employer in relation to the employee.  And I think
18  that's probably the management kind of services.  If you are
19  stepping in and providing management services and you're doing
20  that in relation to the particular employer, maybe you could
21  be caught up in the parameters of the regulation.

22       The final one, which is the only one I think that
23  has some, arguably, applicability here, is (3), where the
24  employers are not completely disassociated with respect to the
25  employment of a particular employee.  And I don't know what

1   completely disassociated means in this context, and it could
2   mean that you're providing some services for one, some
3   services to another.

4          But it goes on to say that:  May be deemed to share
5   control of the employee, directly or indirectly, by reason of
6   the fact that one or more employer controls or is controlled
7   by or is under common control with the other employer.

8          The cases that are cited there are the same kinds
9   of cases that the Plaintiff was citing where there was some
10  individual generally who was actually providing the hands-on
11  management and was interfacing and making decisions, directs
12  decisions, relevant to the particular employee or employees in
13  question.

14         So these were not the cases where you have a parent
15  company and a subsidiary, and that's the sole relation that
16  you have, and you don't have the parent actually managing the
17  business of human relations or anything else like that.

18         So that's why when you first read the Plaintiffs'
19  brief, the Plaintiff is making all the arguments, they're
20  providing human relations services, they're providing the
21  benefits, they're providing policies, all of that type thing.

22         The response by the Defendant shown by affidavit
23  said that was not the case.  That there were other entities.
24  So there may be other employers here who may be appropriate to
25  be brought in, but it doesn't appear that it would be SCI if

1    SCI as the corporate board is not doing something overtly to

2    be involved in the management or the operational control of

3    the businesses.

4              So that's the problem that I see here for the

5    Plaintiffs.  So I will hear from the Plaintiffs first.

6              MR. THOMAS:  Your Honor, you -- I understand your

7    position on that, and I don't think -- I will leave it be.  I

8    understand where you are coming out on that.  I think that

9    probably what makes the most sense is for us to, if the test

10   is going to be focusing on the operational control, they have

11   certainly listed those entities in their papers and we will

12   either file a new complaint or amend this one to bring those

13   in, and then we will tee up the issue on that score.

14             THE COURT:  Right.  One other thing I wanted to

15   mention, when you look at the definition in Section 203(d)

16   where it defines the person, and it says any person acting

17   directly, so that in itself connotes there has to be some

18   affirmative action.  It can't be just totally passive.

19             There are a number of lower court decisions where

20   you have just the pure parent/subsidiary relationship where

21   the parent really is a pure holding company and has no

22   operational functions of any kind.  The lower courts that have

23   considered this view that as not being an employer for

24   purposes of this statute.

25             MR. THOMAS:  That's fine.  We can bring in those

1  individuals potentially and we will see where we go.  But the
2  operational people have been identified and the operational
3  entities, and that may be a better approach, and we have that
4  in their papers and I think that would be the next step.

5          THE COURT:  So I will deny this motion.  And I
6  think also that would give me the grounds to grant the summary
7  judgment at this stage without prejudice if you are going to
8  continue to try -- are you going to continue to try to keep
9  SCI in?

10          MR. THOMAS:  Yes, Your Honor, and maybe I would
11 make the motion now for leave to amend the complaint to add in
12 the -- at least the entities they have identified in their
13 papers, which are the SCI Eastern Market Support Center LLP,
14 SCI Western Market Support Center, Houston Market Support
15 Center, and the SCI Funeral and Cemetery Publishing -- or
16 Purchasing Cooperative.

17          So we request that that be deferred until we make
18 our motion to amend and motion for notice for those people.
19 We may be adding in individuals or different entities, I don't
20 know.

21          THE COURT:  Because that seems to be what they are
22 looking for.  In all the cases -- and I did read the
23 Defendants' cases and the Plaintiffs, and particularly the
24 Supreme Court cases, and they were all looking for some kind
25 of exercise of control, not just the mere power to control,

1  but somebody that was actually an entity or a person that was

2  actually, you know, involved with the employee.

3          MR. THOMAS:  And I think from their papers you have

4  that there.  They say these were the ones that did the HR

5  functions, these are the ones that interfaced.  If it is

6  simply a question of putting in the new party that has that,

7  we request leave to amend and put those in.

8          THE COURT:  Okay.  I will hear from the Defendant.

9          MR. LAMPE:  Well, since the Court has decided to

10 deny the motion, I am not going to speak to that.

11         I think the two issues that you want to hear from

12 me on is, first of all, you raised the point about the summary

13 judgment motion.

14         THE COURT:  Right.  I specifically said it wouldn't

15 be argued today here.  But in light of their statement that

16 they're willing to -- or they want to amend the complaint, I

17 just don't know if that should be denied without prejudice at

18 this time because I don't know -- it is really difficult when

19 you have serial summary judgments and that type of thing.  So

20 that for judicial economy would be my question where to go

21 from here.

22         MR. LAMPE:  The two named Plaintiffs, Prise and

23 Rady, they never worked for SCI or even an affiliate of SCI.

24 During the time that they were employed by Alderwoods,

25 Alderwoods was a competitor.

1    THE COURT:  So they would have to amend the

2    complaint to bring in another Plaintiff too then.

3    MR. LAMPE:  Right.  We think as to SCI, the named

4    Defendant in this case, these two named Plaintiffs couldn't

5    possibly have a claim against them.  You have already

6    determined that SCI is not an employer, and even if it were --

7    THE COURT:  At least they haven't presented

8    anything to get the notification.

9    MR. LAMPE:  Correct.  But even if they were an

10   employer, they certainly wouldn't be Ms. Prise and Rady's

11   employer because those two people left Alderwoods before there

12   was any association of any kind between Alderwoods and SCI.

13   We think -- we do think it makes sense to dismiss SCI from the

14   case.  There certainly aren't any facts that would suggest the

15   two named Plaintiffs could have any kind of a claim against

16   them.

17   Then as to the request to amend the complaint, I

18   think -- I would need to look to see whether we would have

19   grounds in the law to oppose that.  I know the rules on

20   amendments are fairly liberal, but I am also sort of struck by

21   the fact that we were together back in April and Mr. Thomas

22   raised back then the fact that he needed to take some

23   discovery to find out what the interrelationships were among

24   these various corporate entities.  We agreed to that, and they

25   have taken no discovery.  A half a year has now passed and it

1    seems to me that the time to investigate which corporate

2    Defendants should be brought into the case was a half a year

3    ago, not now.  This case is coming up on a year old and we're

4    talking about trying to bring two completely separate

5    corporations into this lawsuit.

6           This class period, if you go back three years, to

7    the vast majority of this class period, Alderwoods and SCI are

8    competitors.  There is no relationship at all.  As of November

9    of last year they became related.  But there's no request for

10   injunctive relief in this case.  This is a damages case.

11          Again, I would want to research this and be able to

12   formally respond, but I think our inclination would be it is

13   too late to try to continue to dredge up some SCI entity to

14   drag into this case which is an Alderwoods case.

15          THE COURT:  If at the time -- I think what they are

16   saying is if at the time in issue, unless you have some other

17   Plaintiffs that come up later, their argument is that these

18   Plaintiffs don't have anything to do with any SCI entity.

19          MR. THOMAS:  Your Honor, that was addressed in our

20   summary judgment papers, which is --

21          THE COURT:  I haven't really spent a lot of time on

22   that.

23          MR. THOMAS:  Exactly.  I was not prepared today to

24   be dealing with that based on the Court's decision.

25          However, what we point out in those papers is there

1    is currently over 50 Plaintiffs in this case who are -- and

2    actually substantially more -- who are SCI employees and who

3    under --

4              THE COURT:  I think what you need to address is

5    whether you need additional -- you can amend to add Plaintiffs

6    as well.  But if they are not -- if they don't have the same

7    basis, I mean, if this all happened under Alderwoods and SCI

8    just inherited them because of their acquisition, they may

9    have inherited the liabilities through the Alderwoods entity

10   that they acquired and they may have to be indirectly

11   financially responsible.  But as a separate entity, maybe they

12   don't have a role to play here.

13             MR. THOMAS:  Actually, Your Honor, when I

14   referred -- there is over 500 Plaintiffs in this lawsuit.

15   Under the FLSA, they are actually party Plaintiffs, they

16   actually become parties, so there is actually over 500 party

17   Plaintiffs here.  Over 50 of those are direct SCI employees.

18   So I think that Mr. Lampe's point is not well-founded in terms

19   of this.  We do have over 50 SCI Plaintiffs.

20             That said, based on what I just heard, we will have

21   to evaluate all of our options.

22             I guess another -- I too am concerned about -- I

23   want to get this case moving forward.

24             THE COURT:  Right.

25             MR. THOMAS:  It may be easier for us, and we will

1    evaluate everything, I don't know what we conclude, we may

2    conclude just simply filing another complaint against SCI and

3    name these people officially, we may choose that.  We may

4    speak to Mr. Lampe to see if he consents.  We may bring a

5    motion to amend.

6                THE COURT:  Is there any concern the same activity

7    is still continuing?

8                MR. THOMAS:  Yes, Your Honor, it is.  Again, the

9    statute of limitations of people is dropping off and we are

10   very concerned about that.  So, again, much like Mr. Lampe, I

11   don't want to answer today not having done the research on the

12   statute of limitations and the parties and the best course,

13   but I think that really whether it's by -- this issue is not

14   going to disappear, it is either going to be by separate

15   complaint or motion to amend, we will get this teed up as soon

16   as possible so we can get these employees -- and, you know,

17   the Defendants, although they say they are concerned about the

18   length of the case, they have knocked off a third of their

19   liability by the length that has gone on already and we want

20   to put that -- we want to put that to an end now.  So we are

21   going to move as quickly as we can so that these employees

22   shouldn't be bearing the cost of what has --

23                THE COURT:  So this motion will be denied on the

24   notification for the reason that there wasn't sufficient

25   evidence presented to the Court to implicate an

1   employer/employee relationship with SCI.  And I will cite the

2   standards of the Falk decision and -- there is a recent

3   Maryland case, Glunt versus GES Exposition Services, Inc., 123

4   Fed Supp. 2d, 847, District of Maryland, 2000.  There's a

5   couple other decisions like this that are cited.  Those are

6   the lower courts I said that have considered this, just a

7   simple parent/subsidiary relationship.

8           But if you wish to amend the complaint, you will

9   file a motion to do that and it can be responded to in due

10  course.  If you want to meet and confer to try to expedite

11  this, it isn't good for either party to have these issues

12  languishing.  So I think we need to move on from there so that

13  the case can progress.

14          MR. THOMAS:  Your Honor, we would like to get, once

15  the motion is made, as expedited a schedule as possible to get

16  that done.  Procedurally how would you prefer us to request

17  when we file the motion that there be --

18          THE COURT:  Ask for an expedited hearing.  File a

19  separate motion asking for an expedited hearing and a

20  shortened briefing schedule.  The other side has to have an

21  opportunity to respond.  So if you ask for an expedited

22  briefing schedule and an expedited hearing, I will see those

23  as they come in.

24          MR. THOMAS:  Thank you, Your Honor.

25          THE COURT:  Okay.  Anything further?

1          MR. LAMPE:  Not from me, Your Honor, thank you.

2          THE COURT:  Thank you all.

3       (Record closed).

4

5

6

7                    *        *        *        *        *

8

9

10

11              C E R T I F I C A T E

12          I, Richard T. Ford, certify that the foregoing

13  is a correct transcript from the record of proceedings in the

14  above-titled matter.

15  S/Richard T. Ford    _____

16

17

18

19

20

21

22

23

24

25

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE AND HEATHER RADY | Civil Action No. 06-1470 |
| Plaintiffs, | |
| | Judge Joy Flowers Conti |
| v. | |
| ALDERWOODS GROUP, INC., BURTON L. HIRSCH FUNERAL HOME, INC., H. P. BRANDT FUNERAL HOME, INC., H. SAMSON, INC., NEILL FUNERAL HOME, INC, & SERVICE CORPORATION INTERNATIONAL | JURY TRIAL DEMANDED |
| Defendants. | |

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

NOW COME, the Plaintiffs, Deborah Prise and Heather Rady, by and through their attorneys, MARGOLIS EDELSTEIN, CHARLES H. SAUL, ESQUIRE and LIBERTY J. WEYANDT, ESQUIRE, and file the following Motion for Leave to File Second Amended Complaint and aver as follows:

1.      This civil action was originally filed by Plaintiffs Prise and Rady on November 6, 2006, which sought relief against Defendants Alderwoods Group, Inc., Burton L. Hirsch Funeral Home, Inc., H. P. Brandt Funeral Home, Inc., H. Samson, Inc., Neill Funeral Home, Inc., under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e), *et. seq* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206 ("EPA").

2.      Plaintiffs filed an Amended Complaint on February 23, 2007, in which Plaintiffs added Service Corporation Inc., as a Defendant in the case. Upon information and belief, Plaintiffs

1

averred that Alderwoods and SCI merged on or about November 28, 2006, via an "Agreement and Plan of Merger," dated April 2, 2006 (see Exhibit 1), which occurred after the filing of Plaintiffs' original Complaint.

3.　It was Plaintiffs' intention to include SCI as a Defendant under a theory of successor liability. However, Defendants interpreted Plaintiffs' Amended Complaint differently, and believed that Plaintiffs' claimed that SCI was the actual employer of Plaintiffs during the time period of the alleged incidents.

4.　Defendants' interpretations of what Plaintiffs' Complaint alleges are hypo-technical and exaggerated, in light of this Court's liberal notice-pleading requirements. It has been confirmed to Defendants that Plaintiffs do not claim that SCI was their employer during the time period in which the incidents alleged in the Complaint occurred, but that SCI is alleged to be liable under a successor liability theory.

5.　Plaintiffs' counsel offered to amend the Complaint to clarify Plaintiffs' position with respect to Defendant SCI in order to resolve this conflict. However, Defendants' counsel refused to consent to Plaintiffs' filing of a Second Amended Complaint, (to resolve the problems which Defendants complained of), but instead demanded the Complaint be withdrawn, or Defendants would request Rule 11 sanctions[1].

6.　Defendants' counsel then claimed that Alderwods and SCI did not merge. Defendants asserted that Alderwoods and SCI are two separate and distinct corporations, and, therefore, Defendants claim that SCI is not a proper party in this action.

_____

[1] Plaintiffs believe that Defendants wanted Plaintiffs to withdraw their Complaint, such that when a new Complaint was filed, Defendants could then assert that the statute of limitations had expired.

7.    The parties appeared before the Court on May 23, 2007, for a status conference, during which the above issues were discussed. The Court permitted Plaintiffs the opportunity to file a Motion requesting leave to file a Second Amended Complaint and also permitted Defendants to file a response thereto[2].

8.    Upon information and belief, Plaintiffs aver that Alderwoods and SCI effectively merged on or about November 28, 2006, through the use of a subsidiary corporation, Coronado Acquisition Corporation ("Coronado"), created solely for the purpose of SCI's acquisition of Alderwoods. The merge of SCI's interests with that of Alderwoods has been scrutinized at length by the Federal Trade Commission. The two entities signed what has been publically referred to as "Agreement and Plan of Merger." (Exhibit 1). Public records also state that SCI acquired Alderwoods. The merger of the two entities is somewhat complicated, and without the benefit of discovery, Plaintiffs are unable to ascertain for certain the true relationship between Alderwoods, SCI and SCI's wholly owned subsidiary, Coronado.

9.    SCI has already legitimately been named as a party in Plaintiffs' First Amended Complaint. In all fairness, Plaintiffs' request to amend the Complaint again, with respect to Defendant SCI, stems from Defendants' complaints about the amendment. In all fairness, the relationship between the two entities is complicated and confusing with numerous filings with the SEC. Defendants have stated that another entity, namely Coronado Acquisition Group ("Coronado"), was created to effectuate the acquisition of Alderwoods. Coronado is believed to be a wholly owned subsidiary of SCI. According to documents filed by SCI with the SEC, Alderwoods

---

[2] Should the Court grant Plaintiffs' Motion, new deadlines for Responsive pleadings and responses thereto will need to be set.

and Coronado merged, and became a wholly owned subsidiary of SCI, which is now called Alderwoods (see Exhibit 1). Plaintiffs contend that this makes SCI a successor in interest to Alderwoods.

10.     Upon information and belief SCI has acquired all the stock and assets of Alderwoods. It is also Plaintiffs understanding that SCI agreed to assume all of Alderwood's liabilities, based upon a review of limited documents which have been available for review.   Since the merger between Alderwoods and SCI took place after the filing of this suit, and after the EEOC investigation, SCI either knew, or should have known of the action and, therefore, should have been aware that they would also be taking on responsibility for the liabilities of Alderwoods that have been alleged in the Complaint.

11.     A true and correct copy of Plaintiff's proposed Second Amended Complaint is attached hereto and marked as Exhibit 2.

12.     Additionally, Plaintiffs also wish to amend their Complaint to include allegations under the Pennsylvania Human Relations Act.   Subsequent to the filing of the First Amended Complaint, Plaintiffs received Notices of Rights from the Pennsylvania Human Relations Commission, dated April 17, 2007.   Therefore, Plaintiffs wish to amend their Complaint to include causes of action which arise under the Pennsylvania Human Relations Act ("PHRA"), of which this Court has supplement jurisdiction. See attachments to Exhibit 2.

13.     No party is prejudiced by the filing of the Second Amended Complaint.   Defendant SCI has already been named as a party to the action via Plaintiffs' First Amended Complaint.   The Amendment with respect to SCI is to clarify Plaintiffs' position that SCI is liable under a successor

4

liability theory, which is being done in part to rectify Defendants' complaints with respect to the

pleading. The amendment with respect to the PHRA claims is the type of amendment which is

routinely granted by the Court, in light of the fact that Plaintiffs could not have included such causes

of action in their Complaint until they were given the right to do so by the PHRC. Furthermore, the

PHRA claim, mirrors the claims already pled under Title VII.

   WHEREFORE, Plaintiffs, respectfully requests that this Court grant the instant

Motion for Leave to Amend Complaint.

         Respectfully submitted,

         MARGOLIS EDELSTEIN

Date:  6/8/07          /s/ Liberty J. Weyandt

         CHARLES H. SAUL, ESQUIRE
         PA I.D. #19938

         LIBERTY J. WEYANDT, ESQUIRE
         P.A. I.D. #87654

         525 William Penn Place
         Suite 3300
         Pittsburgh, PA 15219
         (412) 281-4256

         Attorneys for Plaintiff

## Other Supporting Documents

3:07-cv-05140-MJJ Prise v. Alderwoods Group, Inc. et al

ADRMOP, E-Filing

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

---

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

---

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available .*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at for more information.

---

The following transaction was received from by Daniels, David entered on 11/6/2007 2:49 PM PST and filed on 11/6/2007

**Case Name:**      Prise v. Alderwoods Group, Inc. et al
**Case Number:**    3:07-cv-5140
**Filer:**          Service Corporation International
                    Alderwood Group, Inc.

**Document Number:** 19

**Docket Text:**
MEMORANDUM in Support *of Motion to Dismiss First Amended Complaint* filed by Alderwood Group, Inc., Service Corporation International. (Attachments: # (1) Exhibit Memorandum of Points & Authorities in Support of Motion To Dismiss First Amended Complaint (Part 2 of 2))(Daniels, David) (Filed on 11/6/2007)

**3:07-cv-5140 Notice has been electronically mailed to:**

David Merrill Daniels    david@gurneelaw.com

Amy E. Dias    aedias@jonesday.com

Steven Hazard Gurnee    steve@gurneelaw.com

John A. Mason    john@gurneelaw.com, candace@gurneelaw.com

Maria V. Morris    mmorris@rbg-law.com, e_file_sd@csgrr.com, e_file_sf@csgrr.com

Lori Rifkin    lrifkin@rbalaw.com, lrifkin@rbg-law.com, abelardino@theemploymentattorneys.com,
agifford@theemploymentattorneys.com, jcordello@theemploymentattorneys.com,
nthomas@theemploymentattorneys.com, psolomon@theemploymentattorneys.com

Sanford Jay Rosen    srosen@rbg-law.com, smillham@rbg-law.com

**3:07-cv-5140 Notice has been delivered by other means to:**

Nicholas Pierre Forestiere
Gurnee Wolden & Daniels LLP
2240 Douglas Blvd #150
Roseville, CA 95661-3875

Charles Saul
Margolis Edelstein
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219

J. Nelson Thomas
Dolin, Thomas & Solomon LLP
693 East Avenue
Rochester, NY 14607

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** G:\Prise v. Alderwoods\Scan-Mtn to Dismiss (filed docs)\Notice of Motion (12-18-07 hearing date).pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=11/6/2007] [FileNumber=3892349-0]
[aab3d0f022f95563b7ef44dd567b845c52fd50500c2865e36af5f132868bcab5a62c0
80251bf8b3f511728b81e592e8872e99ea4f26dd6976934303e2ea1a783]]